In re ST. JOSEPH CLEANERS, INC., Debtor.

No. HK 97–09742.

United States Bankruptcy Court, W.D. Michigan.

July 12, 2006.

Thomas G. King, Esq., Kalamazoo, MI, for Debtor.

Paul F. Davidoff, Esq., Kalamazoo, MI, for Chapter 7 Trustee.

Dean E. Rietberg, Esq., Grand Rapids, MI, for the United States Trustee.

Thomas C. Richardson, Esq., Kalamazoo, MI, Ch. 7 Trustee.

## OPINION RE: TRUSTEE'S MOTION FOR DISGORGEMENT OF RETAINER

JEFFREY R. HUGHES, Bankruptcy Judge.

On July 28, 2005, the Chapter 7 Trustee filed a motion entitled "Motion for Disgorgement of Retainer." The purpose of the motion was to compel the law firm of Kreis, Enderle, Callander & Hudgins, P.C. ("Kreis Enderle") to turnover a portion of what it had received as a pre-petition retainer to represent its client, St. Joseph Cleaners, Inc. ("St. Joseph Cleaners"). The motion is denied.

### BACKGROUND

St. Joseph Cleaners filed for Chapter 11 relief on November 10, 1997. St. Joseph Cleaners had hired Kreis Enderle to represent it shortly before it filed its petition. Kreis Enderle received a $10,000 retainer at the outset of the representation.[1] Approximately $6,700 of the original retainer remained when St. Joseph Cleaners filed its petition. St. Joseph Cleaners' interest in the retainer became property of the

---

**1.** There is a dispute as to the source of the retainer paid. The United States Trustee ("UST"), who has appeared in support of the Chapter 7 Trustee's motion, contends that the retainer was paid by St. Joseph Cleaners. Kreis Enderle, on the other hand, contends that Mr. Nooralah, a shareholder, paid the retainer from his own personal funds. For purposes of this opinion, I am assuming that St. Joseph Cleaners paid the retainer.

estate. 11 U.S.C. § 541(a)(1).[2] *See also, In re Downs,* 103 F.3d 472, 478 (6th Cir. 1996).

St. Joseph Cleaners, as debtor-in-possession, immediately hired Kreis Enderle to represent the bankruptcy estate in the Chapter 11 proceeding. St. Joseph Cleaners was able to confirm a plan of reorganization. However, St. Joseph Cleaners defaulted on the plan and the case was ultimately converted to a Chapter 7 proceeding on September 14, 2000.

The Chapter 7 Trustee has administered the bankruptcy estate since the case was converted. On May 10, 2005, the Chapter 7 Trustee filed his final report and account concerning that administration. The final report disclosed total receipts of $12,479.14. These receipts were sufficient to pay all Chapter 7 administrative claims. However, only a small amount remains to pay the reported $170,339.41 in unpaid Chapter 11 administrative claims.

The Chapter 7 Trustee's final report also listed Kreis Enderle as having received a "negative" distribution of $5,302.87.[3] Kreis Enderle correctly interpreted this statement to mean that the Chapter 7 Trustee intended to recover from Kreis Enderle a portion of what Kreis Enderle had received as compensation for its representation of St. Joseph Cleaners during the Chapter 11. Consequently, Kreis Enderle filed an objection to the final report.

Kreis Enderle's objection prompted the Chapter 7 Trustee to file the motion now before me.[4] I first heard that motion on October 3, 2005. Each side submitted briefs. I took the matter under advisement at the conclusion of the adjourned hearing on December 1, 2005.

### DISCUSSION

The Chapter 7 Trustee's motion is premised upon *Specker Motor Sales Co. v. Ei-*

---

2. The Bankruptcy Code is set forth in 11 U.S.C. §§ 101–1532. Unless otherwise noted, all further statutory references are to the Bankruptcy Code.

St. Joseph Cleaners filed its bankruptcy petition before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPC-PA"), Pub.L. No. 109–8, § 1501, 119 Stat. 80, 216. Nonetheless, citations to the Bankruptcy Code reflect the BAPCPA amendments unless noted otherwise.

3. The Chapter 7 Trustee also proposed to make a "negative" distribution to the accounting firm of McMurray, Marks & Edmunds, PC. McMurray, Marks had also been employed by the bankruptcy estate during the Chapter 11 and had apparently also received a retainer. However, McMurray, Marks did not file an objection to the Chapter 7 Trustee's final report.

4. Kreis Enderle's objection was actually heard on June 15, 2005. However, I suggested at that hearing that a final report and account was not the appropriate vehicle for

pursuing a fee disgorgement. First, the fact that fees may have to be disgorged implies that the final account is premature. In other words, if funds must still be collected before a final distribution can be made, it follows that the Trustee should not have filed a final report and account. Second, using the final report and account as a recovery device is procedurally defective. The Federal Rules of Bankruptcy Procedure contemplate affirmative relief being granted either through motion practice or an adversary proceeding. Fed.R.Bankr.P. 7001 and 9013. Granted, it is at least conceivable that a motion to disgorge could be incorporated into a final report and account. However, the final report and account falls short because there is no affirmative request of Kreis Enderle to repay the amount. It is fortunate for Kreis Enderle that it had sufficient bankruptcy savvy to understand that the minus sign in front of its proposed distribution in the final report and account meant not only that the Chapter 7 Trustee did not intend to pay it anything more but that the Chapter 7 Trustee also intended to recover from Kreis Enderle monies it had already received.

*sen,* 393 F.3d 659 (6th Cir.2004). Specker Motors, as debtor-in-possession, had retained Donald Bays, Esq. to represent the bankruptcy estate in its Chapter 11 proceeding. Mr. Bays received a $10,000.00 retainer in connection with the representation. Unfortunately, Specker Motors' Chapter 11 proceeding did not succeed and the case was converted to Chapter 7 prior to confirmation of a plan.

Mr. Bays thereafter filed an application to approve his unpaid fees for representing Specker Motors as the Chapter 11 debtor-in-possession. The court awarded Mr. Bays' fees in the amount of $17,343.10. The court also permitted Mr. Bays to apply the $10,000 retainer he had previously received against this amount.

The Chapter 7 trustee filed his final report and account shortly after Mr. Bays' fees were awarded. That report revealed that Chapter 11 administrative claimants had filed unpaid claims in excess of $200,000 and that the bankruptcy estate had less than $12,000 available to pay those claims. The Chapter 7 trustee thereupon filed a motion to compel Mr. Bays to disgorge nearly all of the $10,000 he had applied. The purpose of the Chapter 7 trustee's motion was to recover a sufficient amount from Mr. Bays so as to ensure that Mr. Bays received proportionately no more on account of his Chapter 11 award for attorneys fees than the other unpaid Chapter 11 administrative creditors received on account of their requests for payment.

The bankruptcy court granted the motion and ordered Mr. Bays to return $9,026.59 of the $10,000.00 retainer. The district court affirmed the bankruptcy court on appeal and the Sixth Circuit then affirmed the district court.

The specific question in *Specker Motor* was whether the disgorgement of attorneys fees at the conclusion of a case to equalize the distribution among unpaid Chapter 11 administrative expenses was mandatory or simply discretionary. The Sixth Circuit concluded that disgorgement was mandatory because of the unambiguous language of Section 726(b). *Id.* at 662. However, the Sixth Circuit offered little explanation as to how it reached the conclusion that Section 726(b) required such disgorgement. It appears that the Sixth Circuit relied upon the fact that interim awards to professionals "is subject to reexamination and adjustment." *Id.* at 663. However, the Sixth Circuit indicated at the beginning of its opinion that the fee application the bankruptcy court had approved prior to the Chapter 7 trustee's effort to disgorge was a final application, not an interim application.

> On February 4, 2002, the bankruptcy court approved Bays's final application for total fees in he amount of $17,343.10. *Id.* at 661.[5]

Other courts that have required disgorgement of professional fees at the end of a case so as to equalize the distribution among administrative claimants all acknowledge that Section 726(b) itself does not provide that remedy. *See, e.g., Matz v. Hoseman,* 197 B.R. 635, 639 (N.D.Ill. 1996); *In re Anolik,* 207 B.R. 34, 38–39 (Bankr.D.Mass.1997); *Guinee v. Toombs (In re Kearing),* 170 B.R. 1, 7 (Bankr. D.D.C.1994). These courts instead have found the remedy within Section 105(a). *See, e.g., Matz,* 197 B.R. at 640; *Kearing,* 170 B.R. at 7. That section provides, in

---

5. The Sixth Circuit did then state that the bankruptcy court permitted Mr. Bays to keep the $10,000.00 retainer he had received as "interim compensation." However, it is diffi-

cult to understand how the Sixth Circuit reached this conclusion given that the award itself was final.

part, that "the court may issue any order ... that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Their apparent rationale is that Section 726(b) so clearly mandates a pro rata distribution among creditors that Congress' failure to include a remedy to complement that mandate can be explained only as oversight on its part. Consequently, these courts conclude that it is appropriate for them to exercise their Section 105(a) authority to correct this obvious error.

■ I am always troubled when such reasoning is applied. There are certainly instances where I and other bankruptcy judges have had to address gaps left in the Bankruptcy Code by Congress. *See, e.g., In re Bulson,* 327 B.R. 830 (Bankr. W.D.Mich.2005).[6] However, for the most part, the Bankruptcy Code is well drafted. Consequently, judicial intervention should be the exception, not the rule. Courts should not invent a remedy without first considering carefully the Bankruptcy Code as a whole.

Bankruptcy is a process and, like most processes, bankruptcy has a beginning and an end. All bankruptcy cases begin with the filing of a petition. 11 U.S.C. §§ 301–303. How a bankruptcy case ends, though, depends upon the chapter selected. Chapter 11, 12, and 13 cases end with the successful execution of a confirmed plan. In contrast, a Chapter 7 case ends with the Chapter 7 Trustee's distribution of the proceeds of its liquidated assets. 11 U.S.C. § 726.[7]

The Bankruptcy Code also establishes the procedures that are to be followed from the beginning of the case to its conclusion. Those procedures are relatively simple in a Chapter 7 proceeding. All of the debtor's property automatically is transferred to the bankruptcy estate and the Chapter 7 trustee liquidates the same. 11 U.S.C. §§ 541(a)(1) and 704(a)(1). The liquidation process includes sorting out competing interests and liens and evaluating exemptions claimed. *In re Talbert,* 268 B.R. 811 (Bankr.W.D.Mich.2001). The Chapter 7 trustee also evaluates and resolves claims made by various creditors and administrative claimants against the bankruptcy estate. 11 U.S.C. § 704(a)(5).

These two processes culminate with the Chapter 7 trustee distributing whatever non-exempt proceeds are in the trustee's accounts to administrative, priority and general creditors in the order mandated by Section 726. The Chapter 7 trustee's final report and final account documents the Chapter 7 trustee's compliance with Section 726.

Ideally, there would be no interim distribution to any claimant, including any administrative claimant, until the Chapter 7 case was ready to be closed. The Chapter 7 trustee would administer the Chapter 7 case on credit and all administrative claimants would simply wait until the Chapter 7 trustee made his Section 726 distributions. However, a bankruptcy estate's administrative creditors are no more patient then creditors generally. Landlords of storage space, locksmiths, and title companies seldom are willing to wait for months or even

---

6. *Bulson* involved the interpretation of Section 1322(b)(2). I determined in *Bulson* that Congress had failed to adequately define the phrase "real property that is the debtor's principal residence" when it enacted that section. Therefore, I concluded that it was appropriate to give definition to that phrase so

as to properly implement the purpose of that section.

7. Chapter 7, of course, also involves debtor-related questions such as the debtor's entitlement to a discharge and the non-dischargeability of certain claims against him.

years until the Chapter 7 trustee is ready to make the Section 726 distribution.

How, then, does the Bankruptcy Code accommodate these administrative claimants? The visceral answer is Section 503(b)(1). However, Section 503(b)(1) is for the most part definitional. It merely describes the post-petition expenses incurred by the bankruptcy estate that are entitled to Section 507(a)(2) priority in conjunction with the final distribution under Section 726. What is not included in Section 503 is any authority for the Chapter 7 trustee to in fact pay the expenses incurred with property of the estate.

The authority to actually pay allowed administrative expenses at the conclusion of a Chapter 7 case is found in Section 726 itself.

> (a) Except as provided in section 510 of this title, **property of the estate shall be distributed—**
>
> &ast;     &ast;     &ast;     &ast;     &ast;     &ast;

11 U.S.C. § 726(a) (emphasis added).

As for a trustee's authority to pay administrative claimants DURING the administration of the Chapter 7 case, that authority lies in Section 363. Section 363, which is included within the subchapter of the Bankruptcy Code entitled "Adminis-

trative Powers," provides that the Chapter 7 trustee "may use" property of the estate during the administration of the case if there has been prior notice and a hearing.[8] Indeed, the Chapter 7 trustee may even use property of the estate without notice and a hearing if the use is in the ordinary course of debtor's business and the Chapter 7 trustee has been authorized to operate that business. 11 U.S.C. §§ 363(b) and (c).[9]

Therefore, a Chapter 7 administrative claimant need not wait until the end of the case to receive payment pursuant to Section 726. Rather, the Chapter 7 Trustee has the authority to pay that claimant during the administration of the case pursuant to Section 363. Moreover, an administrative claim paid pursuant to Section 363 is final unless the order itself places a condition upon the payment authorized. In other words, a Chapter 7 trustee cannot later "reel back" a distribution made pursuant to Section 363(b) or (c) unless the order itself conditions payment on the right to recover at some later date.

Section 549 confirms the inviolability of a Section 363(b) distribution made during the administration of a Chapter 7 proceeding. That section, in conjunction with Section 550, empowers a Chapter 7

---

**8.** The Seventh Circuit in *In re Kmart,* 359 F.3d 866 (7th Cir.2004) recognized that the "use" aspect of Section 363 authorizes the trustee to make distributions from property of the bankruptcy estate during the trustee's administration of the case. *Id.* at 872. Indeed, the Seventh Circuit discussed this concept in the context of the trustee or debtor-in-possession "using" property of the estate to pay critical vendors some or all of their pre-petition claims at the outset of a Chapter 11 case instead of as part of a confirmed Chapter 11 or at the conclusion of a subsequent Chapter 7 case. Although *Kmart* did not actually validate Section 363(b) as a device to pay so-called critical vendors, it does suggest yet another exception to the notion that "11 U.S.C. § 726(b) plainly mandates *pro rata* dis-

tribution of assets among creditors in the same statutory class." *Specker Motor,* 393 F.3d at 662.

**9.** Although Section 363(c) permits property of the estate to be used to pay "ordinary course" administrative expenses without notice and a hearing, Section 503(b) also requires that there be a notice and hearing regarding the allowance of any such expense and Section 503(b) contains no similar "ordinary course" exception to this requirement. In this district the court addresses this separate issue through a "definitive order" which, among other things, authorizes ordinary course expenses incurred by the Chapter 11 debtor.

trustee to recover post-petition transfers of the bankruptcy estate's property. However, Section 549 also specifically excepts from recovery any post-petition transfer that is authorized by the Bankruptcy Code itself or by the court. 11 U.S.C. § 549(a)(2)(B). Consequently, the trustee in a converted Chapter 7 proceeding cannot use Section 549 to recover the payment of Chapter 11 administrative expenses previously made by the debtor-in-possession if those payments were made under the authority of Section 363(b) or (c).

Courts intuitively recognize this rule whenever they except from Section 726(b) "disgorgement" payments made "in the ordinary course of business" during the case. *See, e.g., In re Lochmiller Industries Inc.,* 178 B.R. 241, 247 (Bankr.S.D.Cal.1995); *In re Kearing,* 170 B.R. at 7. However, recovery is unavailable not because of some judicially imposed exception to Section 726(b). Rather, recovery is unavailable because Section 549 does not permit the recovery of prior payments made by the estate in the ordinary course under the authority of Section 363(c).

The Bankruptcy Code also provides for the payment of the bankruptcy estate's professionals during the administration of the case. However, the Bankruptcy Code distinguishes professionals from other administrative claimants of the estate. The court must approve the employment of all professionals. 11 U.S.C. § 327. In addition, the fee to be paid a professional is ultimately limited to whatever the court determines is reasonable. 11 U.S.C. § 330(a)(1)(A). Consequently, it is not surprising that the Bankruptcy Code includes special provisions for the payment of professional fees apart from the general provisions of Sections 363(b) and (c).

These special provisions are set forth in Sections 330 and 331. Section 330 specifically permits the court to award reasonable compensation to a professional. 11 U.S.C. § 330(a)(1)(A).[10] A final award of fees is generally made by the court when the professional has concluded his or her employment.

In many instances, a final award of fees under Section 330 is all that is required. Realtors and other professionals whose compensation is based upon a commission or a percentage of the estate's recovery usually fall into this category. Professionals whose employment is to be of a short duration also are frequently compensated with a single Section 330 award.

However, a single Section 330 award at the conclusion of the representation is not realistic with respect to professionals who are retained for long durations of time. It would be virtually impossible for the bankruptcy estate to employ an attorney, accountant, or other professional for an extended period if that professional had to wait until the end of the engagement to receive any compensation for services performed.

Therefore, Section 331 complements Section 330 by permitting "long term" professionals to receive interim compensation pending the award of a final amount under Section 330.

A trustee, an examiner, a debtor's attorney, or any professional person em-

---

**10.** Courts should give words their common, ordinary, contemporary meaning when interpreting a statute. *Perrin v. U.S.,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). "Award" means "to give by judicial decree or after careful consideration." Webster's Ninth New Collegiate Dictionary (1989) (emphasis added). Consequently, it is fair to conclude that *a court's award of professional fees* under Section 330 not only establishes the final amount the professional is to be paid for its services but also authorizes the trustee or debtor-in-possession to distribute that amount.

ployed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

11 U.S.C. § 331.

However, Section 331 is linked to Section 330, not to Section 726. In other words, interim compensation under Section 331 is necessary only until a final award is made under Section 330. In many instances, the Section 330 award will coincide with the Section 726 distribution. However, in many other instances the professional will have received both his interim compensation under Section 331 and his final award under Section 330 well before the Section 726 distribution is to be made.[11]

There is, then, a parallel between the process for authorizing the payment of professional claims during the administration of the estate and the process for authorizing the payment of non-professional administrative claims during the administration of the estate. The difference between the two lies only in the special attention that must be given to the award of professional fees. Consequently, it is fair to ask why this symmetry should not extend to the issue of disgorgement as well. Again, it is quite clear that the recipient of an ordinary course payment in a Chapter 11 proceeding cannot be compelled to later disgorge that payment under Section 549 because the payment was made under the authority of Section 363(c). Similarly, it is quite clear that a landlord who has been paid rent by a Chapter 7 trustee for storage space under the authority of Sections 503(b)(1) and 363(b) cannot be compelled to later disgorge those rents under Section 549. Should not, then, the bankruptcy estate's payment of professional fees under the authority of Sections 330 and 331 also be exempt from later disgorgement under Section 549?

■ The answer is a qualified yes. Payments made by the bankruptcy estate to professionals under the authority of Section 330 or 331 are no more subject to a Section 549 recovery than payments made by the bankruptcy estate to non-professionals under the authority of Section 363(b) or (c). Nonetheless, professionals, unlike other administrative claimants, may still be compelled under the Bankruptcy Code to disgorge compensation previously received from the estate under certain circumstances. However, the authority to "reel back" such fees does not stem either directly from Section 726(b) or indirectly through the imposition of Section 105(a). Nor does the authority derive from the supposed interlocutory nature of an interim award.[12] Rather, the authority to re-

---

11. Of course, a court may always defer the award of a final fee under Section 330 until the Section 726 distribution. A court may also condition a final award under Section 330 so as to require disgorgement in the event there later is an administrative insolvency. For example, in *Lochmiller Industries*, some of the orders specifically provided that the Section 330 fees awarded were still subject "to disgorgement in the event that the Chapter 7 Estate's assets are insufficient to satisfy Chapter 11 administrative expenses in full." 178 B.R. at 244.

12. Some courts have treated interim awards under Section 331 as the equivalent of an interlocutory order on the theory that interim awards are subject to later adjustment as part of a final award. *See, e.g., In re Anolik*, 207 B.R. at 37–38 (collecting cases). However, a court's ability to later re-examine and adjust an interim fee does not make that award any

cover previously awarded fees is found within Section 330 itself. Specifically, Section 330(a)(5) provides that:

> The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331 and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

11 U.S.C. § 330(a)(5).

Section 330(a)(5), though, is only a limited remedy. *Specker Motor* and similar cases give the Chapter 7 trustee judicial authority to "reel back" previously paid attorney fees at any time through the conclusion of the Chapter 7 proceeding. However, Section 330(a)(5) requires disgorgement only if the amount awarded to the professional as interim compensation under Section 331 exceeds what the court ultimately awards as a professional fee under Section 330. Consequently, the right to recover fees under Section 330(a)(5) ceases once the final Section 330 award is made. If the court authorizes the payment of, for example, a realtor's commission as a final award under Section 330 during the course of a Chapter 7 proceeding, then the trustee cannot later use Section 330(a)(5) to recover that commission so as to ensure a pro rata distribution among the remaining administrative claimants.

Moreover, Section 330 does not include "administrative insolvency" as a factor for consideration in connection with whether the compensation sought is reasonable.

> (3) In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

Granted, the factors listed in Section 330(a)(3) are not exclusive, 11 U.S.C. § 102(3), and therefore administrative insolvency may still be relevant to the court's evaluation of whether overall compensation sought by the professional is reasonable under the circumstances. For example, an attorney's failure to take into consideration the relative costs of a legal strategy in relation to the benefits to be had may be an important factor in determining the final fee to be awarded. How-

---

less final. The interim award stands on its own. If a subsequent adjustment is requested, that adjustment is not made to the interim award previously ordered. Rather, the adjustment is made to the separate order to be issued in reference to the Section 330 final award.

ever, Section 330 offers no justification for the rule imposed by *Specker Motor* and other similar cases, that being that the mere existence of an administrative insolvency at the time of the Section 726(b) distribution mandates an irrebuttable presumption of unreasonableness and a corresponding right by the Chapter 7 Trustee to pursue recovery from that professional in the name of Section 726(b).

In short, the Bankruptcy Code itself provides a comprehensive scheme for the distribution of estate property during the administration of a bankruptcy case. Section 363(b) permits the payment of non-professional administrative claims and Sections 330 and 331 permit the payment of professional administrative claims. Moreover, there is no recovery of any distribution once payment is authorized and made. 11 U.S.C. § 549. The only exception is that an interim distribution made under Section 331 on account of professional fees may be recovered under Section 330(a)(5) if the calculation of the Section 330 final award so requires.

*Specker Motor* cites *Matz, Lochmiller Industries*, and *Kingston Turf* as authority for the imposition of a judicial remedy under Sections 726(b) and 105(a). However, Section 330(a)(5) was not added to the Bankruptcy Code until 1994 and *Matz, Lochmiller Industries*, and *Kingston Turf* all involved cases filed before the effective date of that enactment. It was certainly reasonable for courts prior to the enactment of Section 330(a)(5) to conclude that Congress' own silence as to the circumstances under which awarded professional fees might be later recovered left open the opportunity for the judiciary to fashion its own remedies under the authority of Section 105(a).

However, the courts' latitude under Section 105(a) prior to 1994 has been circum-

scribed by Congress' enactment of Section 330(a)(5). What had been a question for debate has now been answered by Congress' declaration that disgorgement of attorneys fees previously awarded may be required only in the context of adjusting the final fee award under Section 330. Congress could have added a similar disgorgement remedy to Section 726(b) at the same time it codified disgorgement for purposes of Section 330. It did not.

Therefore, I have doubts concerning *Specker Motors'* conclusion that Section 726(b) requires a professional to return to the bankruptcy estate previously paid fees even when those fees have been paid pursuant to a final award under Section 330(a). Indeed, it is possible that the Sixth Circuit itself would have second doubts about *Specker Motor* under different facts. For example, *Specker Motor* seems to require that realtor commissions, appraiser fees and other similar compensation must also be returned to the trustee for re-distribution to other Chapter 7 and Chapter 11 administrative claimants even though those commissions and fees may have been earned and distributed as final Section 330 awards years before the Section 726(b) distribution is to be made. Nonetheless, I accept *Specker Motor* as binding and, therefore, I would have granted the Chapter 7 Trustee's motion to compel disgorgement had the circumstances been the same in this case as they were in *Specker Motor*.

■ However, both the Chapter 7 Trustee and Kreis Enderle have overlooked an important distinction. In *Specker Motor*, the debtor never confirmed a Chapter 11 plan. However, in the instant case, Debtor did confirm a plan and Kreis Enderle's fees were awarded in conjunction with that confirmation. Specifically, this court's rec-

ords [13] indicate that St. Joseph Cleaners' first amended plan was confirmed at a hearing on January 21, 1999, and that the order confirming the plan was signed that same day. The plan as confirmed provided that all unpaid administrative claims, including the unpaid fees of Kreis Enderle, be paid in full by the plan's effective date unless otherwise agreed. *See,* Plan, Sections 3.01 and 6.01. *See also,* 11 U.S.C. § 1129(a)(9)(A).[14]

The court had approved Kreis Enderle's first application for fees shortly before the January 1999 confirmation of St. Joseph Cleaners' plan. The December 21, 1998 order not only approved the fees requested but also authorized Kreis Enderle to apply against the fees awarded the remaining $6,586.75 of the retainer that is now the object of the Chapter 7 Trustee's motion.

Kreis Enderle thereafter filed an application for the balance of its fees in June 1999, about four and one-half months after confirmation of the plan. Kreis Enderle styled this application as its "Second & **Final Application** for Payment of Chapter 11 Administrative Attorney Fees" (emphasis added). This second petition added another $9,547.50 in fees to the $29,387.53 already set forth in the earlier application.

The court approved the fees requested in the second application in its July 2, 1999 order. That order was entitled "Second & **Final Order** for Payment of Chapter 11 Administrative Attorneys Fees" (emphasis added). The July 2, 1999 order also reaffirmed the confirmed plan's provision that whatever remained owing on the approved fees was to be paid "in accordance with Debtor's First Amended Plan of Reorganization, or upon further Order of this Court."

St. Joseph Cleaners, as the reorganized debtor, operated for more than eighteen months after its Chapter 11 plan was confirmed. It was not until March 20, 2000 that the United States Trustee filed his motion to convert the case and it was not until September 14, 2000, after numerous adjournments, that the court finally granted the motion and converted the case.

Another four and one-half years then passed before the Chapter 7 Trustee began his effort to recover Kreis Enderle's fees. Consequently, a total of nearly six years has elapsed since this court entered the final Section 330 order approving Kreis Enderle's fees in connection with the Chapter 11 proceeding and more than eight years has passed since Kreis Enderle received the original retainer that is the target of the Chapter 7 Trustee's pending motion.

Common sense suggests that Kreis Enderle should not now be compelled to disgorge any of the retainer it had earned so many years ago. This is not an instance where the professional has yet to receive final approval of its fees under Section 330. The court gave its final approval of Kreis Enderle's fees over six years ago when Kreis Enderle's representation of the bankruptcy estate ceased. Indeed, St. Joseph Cleaners itself ceased to exist for all practical purposes more than five years ago when the case was converted to Chapter 7.

The Chapter 7 Trustee's final report and account indicates that there are three other Chapter 11 administrative claimants who remain unpaid at this time: the IRS, the State of Michigan, and McMurray, Marks & Edmund, P.C., the Chapter 11 estate's accountants. Like Kreis Enderle,

---

**13.** I was not assigned to this case until sometime after it was converted to a Chapter 7 proceeding in September 2000.

**14.** Kreis Enderle did agree to receive payment of its fees over time.

McMurray, Marks received a retainer as part of the Chapter 11 proceeding and, therefore, McMurray, Marks is also a target of the Chapter 7 Trustee's disgorgement effort. As for the IRS and the State of Michigan, the final report and account indicates that these entities do have unpaid Chapter 11 administrative claims of $90,971.33 and $16,260, respectively. However, that report does not explain why these claims remain unpaid. St. Joseph Cleaners' confirmed Chapter 11 plan, like all confirmed Chapter 11 plans, required that Chapter 11 administrative claims be paid in full within a short time after confirmation. *See,* 11 U.S.C. § 1129(a)(9)(A). Consequently, it is fair to ask why the IRS and the State of Michigan did not press their rights either during the confirmation process or when they did not receive payment as required once the plan was confirmed. It is also fair to ask why the Chapter 7 Trustee should be attempting to now recover from Kreis Enderle fees that were awarded years ago without any apparent objection by the IRS or the State of Michigan at that time.

I do not mean to suggest that equity is the basis for denying the Chapter 7 Trustee's motion in this instance. Rather, these equitable considerations simply validate my analysis of the Bankruptcy Code itself. In this case, Kreis Enderle was employed by the bankruptcy estate to represent it in the Chapter 11 proceeding and it received a retainer in conjunction with that representation. Kreis Enderle's representation of the bankruptcy estate culmi-

nated with the confirmation of the Chapter 11 plan. The plan authorized the final award of Kreis Enderle's fees as the Chapter 11 estate's attorney and the court completed that award a few months later when it issued its Section 330(a) order. That order permitted Kreis Enderle to apply the remaining balance of the retainer it had received at the outset of its representation. That order also bars the Chapter 7 Trustee from recovering a portion of that retainer some six years later.[15]

At least one court has in fact refused to compel disgorgement of fees paid in conjunction with a confirmed Chapter 11 plan when that case was later converted to a Chapter 7. *In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562 (Bankr.M.D.N.C. 1986). The Chapter 11 debtor in *Kaleidoscope* had also confirmed its Chapter 11 plan. Moreover, the attorneys for the debtor and the creditors committee had been paid their fees after a final award by the court. However, the Chapter 11 examiner and accountant were not so fortunate, for the reorganized debtor no longer had funds when the court awarded them their final fees. Consequently, the examiner and accountant caused the case to be converted to Chapter 7. They then requested the court to recapture the fees paid to the debtor's and the creditors committee's attorneys so that those parties might share pro-rata with them.

The court in *Kaleidoscope* denied the examiner's and accountant's motion. It concluded that Section 726(b) did not give

---

**15.** The July 2, 1999 final award does provide that the fees approved were to be paid "in accordance with Debtor's First Amended Plan of Reorganization, **or upon further Order of this Court**" (emphasis added). Some might interpret the highlighted portion as a qualification upon the final award that leaves open the Chapter 7 Trustee's demand for disgorgement at this later date. However, I do not. Frankly, it is not clear exactly what circum-

stance the highlighted phrase is intended to cover. What is clear to me is that the intended circumstance did not include a subsequent disgorgement pursuant to Section 726(b). This phrase is written in the disjunctive. Consequently, final payment of Kreis Enderle's final award was permitted under the terms of the confirmed plan. No further order of the court was necessary.

it the authority to "reel-in" payments previously made in conjunction with a confirmed plan.

Clearly, parties must be able to rely on the permanency of the plan. Negotiation and compromise of positions would be greatly hindered or impossible if creditors had to contend with the possibility of returning funds after disbursement through valid court order.

\*  \*  \*  \*  \*  \*

This court strongly feels that the confirmed plan as implemented should stand and that the court should not require redistribution of previously disbursed funds. Funds were disbursed as they became available and as allowed and ordered by the court. A confirmed plan binds the participants, and rights are vested with the order of substantial consummation.

Kaleidoscope, 56 B.R. at 565–66. See also, Kearing, 170 B.R. at 6–7.

Kaleidoscope is consistent with the Sixth Circuit's own decision in In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458 (6th Cir.1991). The debtor in Chattanooga had confirmed a Chapter 11 plan that erroneously provided for a bank's claim as secured when in fact the bank had never perfected its lien. The debtor then made post-confirmation payments to the bank on account of its supposed secured claim.

However, the case converted to a Chapter 7 proceeding about a year and a half after confirmation. The Chapter 7 Trustee thereafter filed a motion to recover the post-confirmation payments from the bank. The bankruptcy court denied the motion and the district court affirmed. The Sixth Circuit also affirmed.

There was no question in Chattanooga that the bank's lien was unperfected and therefore the bank should not have received the plan distributions that it did.

Indeed, the bankruptcy court had declared the bank's lien as void in a prior adversary proceeding commenced by the Chapter 7 trustee. However, the Sixth Circuit concluded that the binding effect of the confirmation order precluded the Chapter 7 trustee from later recovering plan distributions that had been made in reliance upon that order. The Sixth Circuit quoted with approval this court's own opinion in Reef Petroleum.

Payments made during an ongoing Chapter 11 should not be "reeled in." As long as payments are made as required by the plan, and the plan remains in effect, a party can rely on the payments being final. However, once the plan is aborted, and a case is converted to Chapter 7, the parties must revert to Chapter 7 to distribute any remaining property of the estate.

Chattanooga, 930 F.2d at 463 (quoting In re Reef Petroleum Corp., 99 B.R. 355, 359 (Bankr.W.D.Mich.1989)) (Nims, J.).

Kreis Enderle's fees awarded in conjunction with the confirmation of St. Joseph Cleaners' Chapter 11 plan should be afforded similar finality. Indeed, Kreis Enderle's entitlement to retain fees that the court itself has approved as reasonable seems much greater then the bank's entitlement in Chattanooga to retain payments it should not have received in the first place.

My colleague, Judge James D. Gregg, recently distinguished Specker Motor in yet another situation. In re U.S. Flow Corporation, 332 B.R. 792 (Bankr. W.D.Mich.2005). The debtor in U.S. Flow enjoyed a short-lived Chapter 11 before the case was converted to a Chapter 7. However, the debtor, as debtor-in-possession, was able within this short time to negotiate a combination cash collateral/lending arrangement with its senior lenders that included a "carve out" of

$55,000 from the cash collateral/loan proceeds to benefit the professionals appointed to represent the Chapter 11 estate and the creditors' committee. Unfortunately, the debtor also managed to lose another $5 million during this same time frame. Therefore, a secondary insolvency existed when the Chapter 11 case was converted to a Chapter 7 proceeding.

The United States Trustee thereafter requested the court to declare that the $55,000 carve out was in fact property of the estate and, therefore, subject to distribution pursuant to Section 726. None of the Chapter 11 professionals had had their fees approved at that point in time. Consequently, the court was not faced with the separate issue of whether fees paid could be "reeled in" or "disgorged."

Judge Gregg nonetheless denied the United States Trustee's request. He concluded that the Chapter 11 professionals were entitled to keep the entire carve out because those monies derived from the senior lenders' collateral, not from property of the estate. *U.S. Flow*, 332 B.R. at 796–97. Judge Gregg agreed that the United States Trustee's position would be well founded if the debtor had carved out those funds from the estate's own property or even if the senior lenders' liens were avoidable. However, neither was the case in the matter before him. Judge Gregg concluded that it was the senior lenders' right to use their collateral as they saw fit. The secured lenders' decision to earmark some of that collateral to pay the Chapter 11 professionals was no more assailable by the United States Trustee or the subsequent Chapter 7 Trustee than would have been the secured lenders' decision to use their collateral to pay their own professionals.[16]

*Specker Motor, U.S. Flow*, and this case all involve very basic issues of bankruptcy administration: what is to be administered and when is it to be distributed. The Bankruptcy Code itself establishes the framework for answering these questions. For example, in a Chapter 7 proceeding, the trustee administers whatever interests become property of the estate and the trustee distributes whatever interests he has liquidated at the conclusion of the case unless the Bankruptcy Code itself permits an earlier distribution. The Bankruptcy Code then identifies the interim distributions that are permitted. They include distributions under Section 363 and interim and final fee awards under Section 330

---

16. I agree with *U.S. Flow* as far as it goes. However, it does raise a host of other questions. For example, it is unclear from the opinion itself as to whether the carve out was in fact earmarked. There are certainly some Chapter 11 proceedings where it is clearly in the interest of the secured creditor to have competent counsel representing the bankruptcy estate and the creditors' committee and the secured creditor is therefore willing to pay for that representation. However, there is at least the suggestion in *U.S. Flow* that it was the professionals, not the senior lenders, who were pressing for the carve out and that the senior lenders' interest was limited to simply whether they would allow this additional $55,000 as yet another line item to the budget being requested by the debtor. If it was in fact the latter, then the United States Trustee stood on much firmer ground in his contention that the budgeted funds were property of the estate as opposed to collateral beyond the reach of the Chapter 7 trustee.

Carve out arrangements also create statutory and ethical problems. A professional appointed to represent the bankruptcy estate or a committee pursuant to Section 327 is to be disinterested and is to otherwise not hold or represent an interest contrary to the estate. Again, there are certainly instances where the secured creditor's agreement to pay the fees of the bankruptcy estate's professionals is without strings. However, there are even more instances where such agreements preclude fees related to investigating the validity of the creditor's lien or the viability of lender liability type claims.

444

and 331. Finally, the Bankruptcy Code establishes the specific circumstances under which distributions made during the administration of the case may be later recovered. Section 549 permits the recovery of unauthorized distributions and Section 330(a)(5) allows for the disgorgement of previously awarded interim fees in conjunction with the final award of fees under Section 330. The Bankruptcy Code specifies no other circumstance.

There is no question that the ideal under Section 726(b) would be a pro rata distribution among all Chapter 11 administrative claimants whenever the bankruptcy estate is insolvent. However, the Bankruptcy Code does not require this ideal. Indeed, the Bankruptcy Code guarantees through Section 363(c) and the limitations of Section 549 that absolute equality of distribution will not be realized as soon as the Chapter 11 debtor uses the first dollar of estate property to pay for a post-petition good or service. Consequently, it is reasonable to ask why Chapter 11 professionals should be singled out in pursuit of an unachievable goal based upon a remedy which is not found anywhere within the Bankruptcy Code itself and which is subject to an ever increasing list of exceptions.

## *CONCLUSION*

For the reasons stated, the Chapter 7 Trustee's motion is denied. *Specker Motor* is inapplicable in this instance because the disgorgement is sought with respect to fees that have been paid as a final award under Section 330 in conjunction with a confirmed Chapter 11 plan.

The court will enter a separate order consistent with this opinion.