RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SPECKER MOTOR SALES CO.,

　　　　　　　　*Respondent-Appellant,*

　　　*v.*

SAIL EISEN, UNITED STATES TRUSTEE,

　　　　　　　　*Petitioner-Appellee.*

No. 03-1893

>

---

Appeal from the United States District Court
for the Western District of Michigan at Marquette.
No. 03-00079—Richard A. Enslen, District Judge.

Submitted: October 26, 2004

Decided and Filed: December 17, 2004[*]

Before: BOGGS, Chief Judge; GILMAN, Circuit Judge; and WEBER, Senior District Judge.[**]

---

## COUNSEL

**ON BRIEF:** Donald Wayne Bays, OSSTYN, BAYS, FERNS & QUINNELL, Marquette, Michigan, for Appellant. P. Matthew Sutko, U.S. DEPARTMENT OF JUSTICE, Washington, D.C., Michele M. Mansfield, EXECUTIVE OFFICE OF THE U.S. TRUSTEES, Washington, D.C., for Appellee.

---

## OPINION

---

　　　BOGGS, Chief Judge. Donald Bays appeals from the district court's order requiring him to disgorge the portion of his retainer in excess of his *pro rata* share of the Specker Motor Sales Company bankruptcy estate. Bays argues that the district court erred in finding that disgorgement is mandatory when necessary to effectuate a *pro rata* distribution of the estate's assets. Because we conclude that such disgorgement is mandatory, we affirm the district court.

---

[*] This decision was originally issued as an "unpublished decision" filed on December 17, 2004. On January 5, 2005, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

## I

Specker Motor Sales, Inc., entered into Chapter 11 bankruptcy on March 18, 1997. On April 21, 1997, the bankruptcy court authorized Specker Motors to employ Donald Bays as its Chapter 11 counsel. At that time, Bays was paid a $10,000 retainer.

In August 1997, the United States Trustee filed a motion requesting that Specker Motors be converted to Chapter 7 liquidation. The Trustee noted that Specker Motors had auctioned off all its assets, failed to file required reports, and failed to make required payments. The motion was granted on September 24, 1997. On October 9, 2001, Bays submitted his final request for fees. On February 4, 2002, the bankruptcy court approved Bays's final application for total fees in the amount of $17,343.10. The court permitted him to keep the $10,000 retainer as interim compensation.

Upon final liquidation, the bankruptcy court determined there were five administrative claimants. Unfortunately for these claimants, the estate's assets were insufficient to cover even the administrative claims. Therefore, as provided by statute, the court divided Specker Motor's remaining assets *pro rata* amongst the five claimants. The administrative claims totaled $204,799.74, far more than the $11,494.67 remaining in the estate. Bays's *pro rata* share was only $973.41. The order thus required Bays to disgorge $9,026.59 of the original $10,000 retainer.

Bays contested the disgorgement. On February 26, 2003, his objections were denied and he was ordered to disgorge by the bankruptcy court. The court found that the plain language of 11 U.S.C. § 726(b) mandates disgorgement when necessary to achieve *pro rata* distribution among similarly situated claimants. The district court affirmed, finding that "mandatory disgorgement is the only reasonable and logical result if 11 U.S.C. § 726(b) is to be given any effect." This timely appeal followed.

## II

We must first consider a jurisdictional issue brought to our attention by the government, but not raised by either court below. Bays was not representing Specker Motors at any stage of this bankruptcy proceeding. Specker Motors entered Chapter 7 bankruptcy in August 1997, and from that point forward could only be represented by its Chapter 7 trustee – presently Sail Eisen. *See Spenlinhaur v. O'Donnell*, 261 F.3d 113, 118 (1st Cir. 2001). Bays has standing to bring suit on his own behalf, but he failed to name himself as a party at any point. Needless to say, the deadline for naming himself as a party on the Notice of Appeal has long passed.

Nonetheless, the government has acknowledged that it was at all times aware that Bays was the opposing party, and we therefore retain jurisdiction. A federal appeals court can exercise jurisdiction over an unnamed party in a particular case only if it finds that the "functional equivalent" of the proper party has been named. *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 312 (1988). We have said that the functional equivalent test is satisfied when the litigant's acts give the appellee notice of the litigant's intent to seek appellate review. *Mattingly v. Farmers State Bank*, 153 F.3d 336, 337 (6th Cir. 1998). The government concedes that it was subjectively aware at every step of litigation that Bays was the opposing party. Such awareness constitutes the notice sufficient to satisfy the functional equivalent test. It is therefore proper for this court to exercise jurisdiction over this appeal.

## III

The sole issue in this case is one of statutory interpretation; there are no disputed facts. We review *de novo* the bankruptcy court's conclusions of law and also accord no deference to the district court's decision. *In re Hurtado*, 342 F.3d 528, 531 (6th Cir. 2003).

11 U.S.C. § 726(b) plainly mandates *pro rata* distribution of assets among creditors in the same statutory class.  It reads, in pertinent part:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), or (8) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, *shall be made pro rata* among claims of the kind specified in each such particular paragraph.

11 U.S.C. § 726(b) (emphasis added).  The use of the word "shall" with the pro rata requirement in § 726(b) indicates that such distribution is not discretionary.  11 U.S.C. § 507(a), which is referenced in § 726(b), establishes a hierarchy of creditors, describing the order in which they may lay claim to the assets of the bankrupt estate.  At the top of this hierarchy are "administrative claimants," whose claims are "administrative expenses allowed under § 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." *Ibid*.  The five creditors in this case authorized by the bankruptcy court to receive a *pro rata* share of the Specker Motors estate have administrative claims as defined in § 507(a).[1]  Bays is one of these five, and, thus, under the statutory scheme Bays is similarly situated to the other four creditors.  Each of these creditors must therefore receive a *pro rata* share of the estate by the plain terms of § 726(b).

It is undisputed that, upon Chapter 7 dissolution, each of these administrative claimants receives only a *pro rata* share of the estate's remaining assets.  Bays, however, argues that the $10,000 retainer already paid to him should not be subject to this mandatory *pro rata* distribution because the money has already been paid out of the estate.  We must therefore consider whether the retainer remains within the scope of mandatory *pro rata* distribution.

We conclude that the $10,000 of interim compensation that Bays was authorized to keep on February 4, 2002, was always subject to disgorgement.[2]  Interim compensation is subject to re-examination and adjustment. *In re Callister,* 673 F.2d 305 (10th Cir. 1982); *Matz v. Hoseman*, 197 B.R. 635, 639-40 (Bankr. N.D. Ill. 1996).  This includes retainers, which are held in trust for the estate, and remain the property of the estate. *In re Downs*, 103 F.3d 472, 478 (6th Cir. 1996).  As discussed above, interim compensation is payment for professional services authorized by § 330(a), and § 330(a) fees are administrative claims.  Bays's claim, like other approved administrative claims on the estate, at all times remained subject to the statutory *pro rata* distribution scheme in § 726(b).

Bays relies on *United States v. Schottenstein, Zox, & Dunn* (*In re Unitcast*), 219 B.R. 741 (B.A.P. 6th Cir. 1998).[3]  The *Unitcast* court found that "nothing in § 726(b) . . . compels trustees

---

[1]Bays's fees are authorized under § 503(b), specifically as "compensation and reimbursement awarded under § 330(a) of this title."

11 U.S.C. § 330(a)(1) permits "(A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and (B) reimbursement for actual, necessary expenses."

[2]Interim compensation for professionals is authorized by 11 U.S.C.A. § 331:

> A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

[3]*Unitcast* is the opinion of a Bankruptcy Appellate Panel, which is equivalent to review by a district court and is therefore non-precedential for this court.  28 U.S.C. § 158(b)(1); *In re Robinson*, 326 F.3d 767, 770-71 (6th Cir. 2003).

of administratively insolvent estates to reach back through the prior administrative periods(s) to recover (only) payments to professionals, that disgorgement then transforms into (unpayable) 'administrative expenses.'" *Id.* at 753. It further noted that to permit such disgorgement would "subordinate" professionals when an estate's funds are insufficient to cover administrative costs. *Ibid*. The court concluded that disgorgement to achieve a *pro rata* distribution was at the sound discretion of the bankruptcy court. *Ibid. See also In re Kids Creek Partners, L.P.,* 220 B.R. 963, 978 (Bankr. N.D. Ill. 1998) (holding that disgorgement to achieve pro rata distribution is at the discretion of the bankruptcy court); *In re Anolik*, 207 B.R. 34, 39 (Bankr. D. Mass. 1997) (same). Bays urges us to adopt *Unitcast.*

We think that the courts below in this case, and most courts that have addressed the issue, were correct to find the *Unitcast* view unpersuasive. *See, e.g., Matz*, 197 B.R. at 640-41 ("[C]ourts have uniformly permitted trustees and creditors to seek the return of funds paid to professionals employed in the bankruptcy proceeding . . . . To hold otherwise would be to ignore the plain language of § 726(b) and to unjustly award certain administrative claims of professionals a 'superpriority' status that is not mandated by the Code.") (citations omitted); *In re Lochmiller Industries, Inc.*, 178 B.R. 241, (Bankr. S.D. Cal. 1995) (collecting cases and stating that, in 1995, it could find no case that did not order disgorgement of interim compensation when necessary to achieve *pro rata* distribution among equally situated creditors); *In re Kingston Turf Farms, Inc.*, 176 B.R. 308, 310 (Bankr. D.R.I. 1995) ("[D]isgorgement is required as a matter of law, just to adhere to the mandatory payment scheme of the Code, i.e., to ensure that all creditors of the same class share [*pro rata*] in the available pool of funds.").

*Unitcast's* emphasis on the harshness of disgorgement and its effect of subordinating professionals, 219 B.R. at 753-54, seems misplaced. It is true that only professionals can be asked to disgorge interim compensation, but that is because only professionals can receive interim compensation under § 331(a). Indeed, failure to order disgorgement gives interim compensation superpriority. The *Unitcast* court seems to imply as much, when it stated that disgorgement "transforms" interim compensation into "administrative expenses" that will be unpayable. 219 B.R. at 753. This implies, of course, that interim compensation to professionals is not an administrative expense. The *Unitcast* decision implicitly creates a super category, above the hierarchy in § 507(a), for interim compensation paid to professionals under § 331.[4] There is no statutory basis for such a super-category. Quite the opposite; fees to professionals can be paid only under § 330(a)(1) and those are explicitly categorized as administrative expenses in § 503(b). *Lamie v. United States Trustee*, 124 S. Ct. 1023, 1030-32 (2004) (finding that debtor's attorney may be compensated only through the statutory authorization in § 330(a)(1)). Disgorgement does not "transform" interim compensation into an administrative expense, because interim compensation is never anything but an administrative expense.

Bays also raises a number of considerations of a public policy nature – he describes them as a "parade of horribles" – arguing that debtor's counsel should not be treated as situated similarly to the other administrative claimants. For instance, Bays argues that he alone is in a fiduciary relationship with the estate and has a special ethical relationship with the estate, which would be undermined by equal treatment or uncertainty of payment. He also argues that placing debtor's counsel on equal footing with other administrative claimants burdens the bankruptcy court with both "lengthy and complicated hearings" necessary to decide who is equally situated with debtor's counsel and the need to "reel in" moneys already disbursed.

---

[4]The *Unitcast* view has another strange consequence. A professional who requested and received interim compensation under § 331 would benefit from the super-category, and could be permitted to keep fees in excess of her *pro rata* share. But that same professional, if she never received interim compensation and instead submitted her fees to the estate at the time it was dissolved, would receive only her *pro rata* share.

These arguments are without merit. Although we, like the district court, are not persuaded, we need not reach the merits of these arguments because the statute is not ambiguous. "Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive *pro rata* shares of the debtor's property." *Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990). Equality of distribution would be vitiated if one equally situated administrative claimant – Bays – received more than his *pro rata* share. It is understandable that this conclusion dismays Bays. He ably provided his services and now, through no fault of his own, is denied all but a sliver of compensation. But his position is no different from that of anyone who provides services or credit to a bankrupt firm. Indeed, as an administrative claimant, his position is better than most. As the district court stated, "counsel is a gambler in [bankruptcy] proceedings like every other administrative creditor."

Because we find that interim compensation must be disgorged when necessary to achieve *pro rata* distribution of a Chapter 7 bankruptcy estate, we AFFIRM the district court.