**In re WORLD WASTE SERVICES, INC., Debtor.**

No. 03–32642–WS.

United States Bankruptcy Court, E.D. Michigan, Southern Division—Flint.

July 24, 2006.

Arnold S. Schafer, Bloomfield Hills, MI, for Debtor.

*OPINION GRANTING IN PART SULLIVAN & LEAVITT, P.C.'S MOTION FOR DISGORGEMENT OF PAID ADMINISTRATIVE EXPENSES*

WALTER SHAPERO, Bankruptcy Judge.

This matter comes before the Court on Motion by Debtors' special counsel Sullivan & Leavitt, P.C. ("Movant") for Disgorgement of Paid Administrative Expenses (the "Motion"). General Electric Capital Corporation ("GE Capital") filed a Joinder in Support of Motion Filed by Movant ("GE Capital's Joinder Motion"). Sullivan, Ward, Asher & Patton, P.C. ("Sullivan Ward") filed an Answer to the Motion. World Waste Services, Inc., and Cove Landfill of Bad Axe, Inc., and their primary counsel, Schafer and Weiner,

PLLC object to the Motion (collectively "the Debtors").[1] For the following reasons, the Court grants the motion, in part.

## A.

### Underlying Facts

On June 27, 2003, the Debtors filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code. The Debtors' bankruptcy estates are being jointly administered.

On September 18, 2003, the Court entered an Order on request of the Debtors' primary counsel, Schafer & Weiner, PLLC, authorizing the Debtors to employ Movant, as special Debtors' counsel.

On November 13, 2003, the Debtors requested the Court's approval to sell all of their operating assets free and clear of liens, to a "stalking horse" bidder, subject to higher and better offers at an auction sale. On February 17, 2004, the Court granted the Debtors' Motion, and substantially all of the Debtors' assets were sold to Richfield Equities, LLC ("Richfield"). Using the funds collected from Richfield, the Debtors paid most, but not all of the administrative expenses incurred prior to the closing of the sale.

Comerica Bank ("Comerica") holds a security interest in substantially all of the Debtors' assets. Comerica and the Debtors entered into an agreement whereby Comerica agreed to permit Debtors to use its cash collateral to fund expenses in accordance with a formula and budgets submitted by the Debtors.

Over the course of the bankruptcy, the Court has granted some administrative expense applications and the Debtors have paid some, but not all of its administrative expenses, including amounts paid to employees of the Debtors, goods and services provided by suppliers, as well as for services provided by professionals. None of the parties dispute the validity of any of those administrative expense claims, whether paid or unpaid. Over the life of the case to date, there appear to be approximately 325 administrative claimants that have been paid a total of approximately $5,555,084.00. The Court is advised that there are approximately 173 administrative claimants that have not been paid, or, at least, not paid in full, including S & L, GE Capital, Schafer & Weiner and Sullivan Ward. Although the amount owed to unpaid administrative claimants is not static, the amount owed currently is approximately $475,000.00.

Debtors remain in Chapter 11, have not confirmed a plan, are now admittedly administratively insolvent, and do not expect to receive any material additional funds. No motion to convert is pending.

## B.

### Parties' Arguments

### I. Movant's Argument

Movant argues that the Bankruptcy Code allows and requires payment of certain administrative expenses, and that all such administrative expenses are to be paid equally under the Code. *See* 11 U.S.C. § 503(B)(1)(a); and 11 U.S.C. § 726(b). Therefore, any entity that was paid administrative expenses during the pendency of the bankruptcy case is subject to sufficient disgorgement of such amounts as will result in all administrative expense claims being paid equally, on a *pro rata* basis.

---

1. For the purposes of this motion, the Debtors and their counsel share the same arguments. Additionally, the Debtors and their counsel are the primary opponents of S & L's motion. Therefore, throughout the Analysis section, the Court will refer to the objecting parties, in combination, as "the Debtors."

Movant reasons that the hierarchy of creditors is established by the Code in § 507(a), which is referenced in § 726(b), near the top of which are "administrative claimants," and that Movant and GE Capital, along with Schafer & Weiner and potentially numerous other parties, are all in that category and similarly situated.

Movant has not been paid anything yet on the order allowing its administrative expense claim and essentially seeks a *pro rata* share of the appropriate amount paid to administrative claimants, which in this case requires disgorgement and redistribution.

Movant relies primarily on *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir.2004), arguing that the Sixth Circuit Court of Appeals' language compels the conclusion that pursuant to § 726(b), disgorgement is *mandatory* when necessary to achieve pro rata distribution among similarly situated claimants.

## II. *GE Capital's Argument*

On May 27, 1999, Cove entered into a lease agreement with GE Capital's predecessor, Safeco Credit Company, Inc. ("Safeco"), whereby Cove agreed that it would lease a certain compactor. The lease was entered into pre-petition.

On April 27, 2004, GE Capital filed a Motion for Entry of a Consent Order for Rejection of Lease, Modification of Automatic Stay and Allowance of Administrative Expense Claim. On April 29, 2004, the Court entered a Consent Order for Rejection of Leases Pursuant to 11 U.S.C. § 365, including rejection of GE Capital's lease. Up until that time (i.e., post-petition), the Debtors maintained exclusive use and possession of the compactor. The terms of the Order allowed GE Capital an administrative expense claim in the amount of $48,892.50. GE Capital has not

received any payment on that claim, and joins Movant in its position.

## II. *Sullivan Ward's Argument*

Sullivan Ward filed an "Objection and Answer" and affirmative defenses to S & L's motion for disgorgement, stating (1) it had received only a portion of its administrative expense claim, and (2) that "Compensation to Sullivan Ward and other, as noted, is based upon amounts received, as a 'carve out' (from the amounts due to Comerica) as hereinbefore set forth" pursuant to cash collateral orders. Sullivan Ward also argues that S & L's motion is moot, because even if all administrative claimants are required to disgorge, neither Movant, nor GE Capital would receive any of the disgorged funds, all of which would be paid to not yet fully paid secured creditors (e.g., Comerica). Sullivan Ward also notes the drastic public policy and practical effects the Court's decision to require disgorgement would have; i.e., no administrative claimant would be safe from a disgorgement order years after they were paid for services rendered or goods provided post-petition, thus chilling the Bankruptcy Code's procedural encouragement of entities to deal with Chapter 11 debtors.

## IV. *Debtors' Arguments*

Debtors variously argue that disgorgement, while appropriate under certain circumstances, is not proper under the specific facts of this case, as follows:

### 1(a). *Movant's Motion Must be Brought as an Adversary Proceeding*

The Debtors argue that the language of Federal Rule of Bankruptcy 7001 requires Movant to bring its motion as an adversary proceeding, because it is "a proceeding to recover money or property...." Fed. R. Bankr.Pro. 7001(1). I.e., because

Movant is attempting to recover money from previously paid administrative claimants, it must file an adversary proceeding naming as defendants each of the entities, from which seeks disgorgement that would afford the named defendants the appropriate rights of a defendant in such a proceeding.

### 1(b). *Disgorgement Would not Benefit S & L or GE Capital*

Here the Debtors argue that disgorgement would not benefit Movant, because Comerica is still presently owed more than $600,000.00 based on a secured debt that would have to be satisfied before S & L or GE Capital was paid on their administrative claims, and the proceeds of any disgorgement must be used to first satisfy that obligation. The argument is that the Court entered an Interim Order Authorizing Debtors' Use of Cash Collateral and Granting Adequate Protection (the Interim Order became a Final Order), in which Comerica agreed to allow the Debtors to use its cash collateral subject to an agreed upon budget. Comerica agreed to allow the Debtors to pay administrative expenses, including professional fees only according to the budget. Comerica enabled the Debtors to continue this process until the closing of the sale to Richfield. They argue that disgorged funds would be property of the estate pursuant to § 541. Because Comerica holds a valid security interest on those funds, the money should and would go to Comerica, and not the administrative claimants, and, thus neither Movant nor GE Capital would benefit from disgorgement.

### 1(c). *Disgorgement is Inappropriate as a Matter of Law*

Debtors also argue that disgorgement is not proper as a matter of law based on the facts of this case, arguing that this case is unlike *Specker* in three important respects. First, the Debtor's attorney in *Specker* from whom disgorgement was sought received an "interim" award of compensation, *Specker*, 393 F.3d at 662, whereas in this case, Schafer and Weiner, and other paid professional administrative claimants received "final" awards of compensation. They argue that the Sixth Circuit Court of Appeal's holding should be narrowly construed and interpreted to be one that holds that interim compensation is held in trust for a debtor's estate, remains property of the estate, and, therefore, is paid subject to reexamination and adjustment, and that because this case does not involve interim orders, *Specker* does not apply.

Second, Debtors argue that *Specker* does not apply to this case, because unlike *Specker* which involved a Chapter 11 case that was converted to a Chapter 7, this case remains an 11, reasoning that Movants' legal argument rely solely upon § 726(b), which has no application in chapter 11 cases.

Third, Debtors argue that *Specker* did not involve payment of administrative expenses out of a secured creditor's cash collateral subject to the secured creditor's consent, whereas this case does, reasoning that because the funds they paid constituted Comerica's collateral, they were not property of the Debtors' estates even at the time of payment, and are thus not subject to disgorgement.

Last, Debtors also argue that Movant and GE Capital have effectively waived their rights to seek disgorgement or their right to object, having failed to appeal the orders awarding their final applications, and that for the administrative claimants who were paid in the normal course of business that had not required approving Court orders, such should remain fixed and no longer property of the estate, and not subject to disgorgement.

### 1(d). *Movants' Requested Relief Would be Inequitable and Impracticable*

Debtors argue that the administrative claimants receiving payments are entitled to rely on the "finality" of those payments, and that Movant waited more than a year since it has performed its services to bring this motion, with no reason for the delay; and that if disgorgement is compelled, the paid administrative claimants, including the Debtors' employees and suppliers would have to suffer a tremendous hardship, which could have been avoided had Movant proceeded more timely.

Debtors further argue that because of Movant's delay in bringing this motion and the large number of administrative creditors in this case, disgorgement is administratively unworkable at this time, in that Debtor employed more than 95 employees, 250 suppliers, and numerous professionals, many if not most of whom were entitled to and received post-petition administrative payments.

Lastly, the Debtors assert that if Movants are entitled to disgorgement at all, the Court can only order disgorgement only to the extent that the paid administrative claimants received more than their pro-rata share of the post-petition amounts owed by the Debtors. The Debtors estimate that there are a total of $6,100,000.00 of post-petition expenses, and that $5,550,000.00 has been paid, which they reason means that each administrative claimant paid in full is entitled to keep approximately ninety one percent of the amounts paid.

### C.

#### *Jurisdiction*

The Court has jurisdiction over these jointly administered cases pursuant to 28 U.S.C. § 1334. This contested matter is a core proceeding, 28 U.S.C. § 157(b)(2)(A) and (D), because it arises out of the Court's previous orders and affects the administration of the bankruptcy estate.

### C.

#### *Conclusions and Analysis*

#### I. *Must S & L File an Adversary Proceeding in Order to Obtain Relief Requested?*

■ Bankruptcy Rule 7001 provides, in pertinent part:

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002[.]

The Debtors argue that because S & L is attempting to recover money from previously paid administrative claimants, it must file an adversary proceeding. The Court rejects this argument.

At this point the Court views (and is disposing of) the issue to simply be one as to whether or not there should be any disgorgement—a matter distinctly prefatory to any proceedings to actually collect money from anyone. On that basis a motion or contested matter procedure is entirely appropriate and acceptable. At some later point, the matter of how and from whom there is going to be any disgorgement will be the subject of further proceedings, and that point is the one at which to determine whether or not an adversary proceeding (or proceedings) or some other procedure is the appropriate and correct one.

#### II. *Analysis of Specker*

■ In *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659 (6th Cir.2004), a chapter

7 trustee in a case converted from chapter 11 and administratively insolvent case, was seeking disgorgement from one previously paid professional, of an amount, which, when added to what the trustee had on hand would be sufficient to provide equal (on a *pro rata* basis) distribution to the remaining unpaid administrative claimants of the same class, including the disgorging professional. While the Court, in the course of doing so, did talk about the fact that what was required to be disgorged was fees paid to a professional which by their very nature and indeed explicitly were interim and thus subject to further and later review, the *Specker* Court's reasoning and broad language was capped off by the following:

> But his (counsel) position is no different from that of anyone who provides services or credit to a bankrupt firm. Indeed as an administrative claimant his position is better than most. As the district court stated, "Counsel is a gambler in (bankruptcy) proceedings like every other administrative claimant."

*Specker*, 393 F.3d at 664.

*Specker's* holding goes quite beyond the interim attorney fee circumstance. If that language means what it says (1) what was most crucial to the holding was that a professional fee claimant, interim or not, was in no different position when it comes to priority of payment and equality of treatment, than a purveyor of goods or other services, and vice versa; and (2) if that is not the proper conclusion to be derived from *Specker's* language, then it is up to a higher court than this one to say so. Prudence, to say nothing of proper respect for, and mandated obeisance of this Court to, opinions of the Court of Appeals that bind this Court, require this Court to conclude that the Court's clear language in *Specker* means what it says. And, what this Court believes *Specker* says

is that as a matter of bankruptcy law, if disgorgement is necessary in order to achieve the result of having all or some proper group of administrative creditors treated the same, then disgorgement is an appropriate remedy. In so concluding, *Specker* simply rejects the parade of horribles arguments, the inequitable arguments and the practical difficulties arguments and the like, set out in cases such as (1) *In re U.S. Flow Corp.*, 332 B.R. 792, 797–98 (Bankr.W.D.Mich.2005) (Where the court held that disgorgement is not appropriate and would be unfair where the administrative claimants were paid pursuant to a court approved carve-out agreement that they relied upon as a final nonappealable court order.), that the Debtors and the other paid administrative claimants urge on this Court; and (2) *In re Hyman Freightways, Inc.*, 342 B.R. 575 (Bankr. D.Minn.2006).

Furthermore, if this Court was not bound by or misinterprets the quoted broad language of *Specker*, it agrees rather that what the Court stated in *Specker* as a matter of bankruptcy law, at least theoretically.

While *Specker* apparently deals only with the funds that were left after a converted ch 11 case (except for the retainer disgorgement) that should not be seen as differentiating it in principle from a case such as this where there is also an administrative insolvency, but there are no funds left. To decide otherwise would to in effect reward the quick and the persistent at the expense of others whose claims are similarly situated and whose efforts were just as important to the debtors attempts to reorganize as theirs. That is antithetical to the very concept of bankruptcy as expressed thru the equality of distribution provisions as well as the very idea of preferences, as pertains to prepetition payments to certain prepetition creditors, pay-

ments to whom are at risk under certain circumstances. That said, the process of essentially going back to the beginning of the case to determine what equality of distribution might mean in terms of dollars, and then mounting an effort to achieve it does indeed involve, if not a "parade of horribles," a parade of difficulties and obstacles that not many would want to undertake and the cost/benefits of which would be difficult to measure, and the ultimate outcome of which would be difficult to predict. But trustees or responsible persons in liquidation situations face those kinds of problems all the time, particularly in situations involving preferences, to which disgorgement is akin, or to collection of accounts receivable. Business judgments will have to be made. The difficulty of pursuit, and collection, however, does not eliminate the obligation to pursue, but rather will limit how long and how far to prudentially continue it.

■ Specker involved professional fees. This case involves professional fees. Professional fees are always subject to "reexamination and adjustment." *Specker*, 393 F.3d at 663. Therefore, at this juncture, the Court recognizes that the remedy of disgorgement is theoretically permitted.

Just specifically how the indicated equality of treatment is or can be achieved is wholly another and much more complicated matter. *Specker* involved a chapter 7 trustee seeking disgorgement of fees paid to one person. It is not sufficiently clear in this case from whom Movant actually seeks disgorgement. Is it only Schafer & Weiner, or both it and Sullivan & Ward? Or, is it all professionals? Or, is it all administrative creditors of all types who have already been paid since the beginning of the case? Whomever it is, should or under what circumstances should the Court permit or require disgorgement from less than all of the administrative

creditors? If so, by what criteria do you decide what group of individuals should disgorge? Who will pursue the disgorgement and how will the cost of doing so be paid? These are just a few of the questions that must be dealt with to make the theoretical but also essentially equitable underpinnings of disgorgement work in an equitable manner-questions which must be further and more fully explored in this case. These are questions which neither *Specker*, nor the pleadings before the Court, clearly or sufficiently fully delineate or decide to enable this Court to now say anything more than disgorgement is a theoretically permitted, and likely required, way to deal with the problem of administrative insolvency in this case.