## In re KALEIDOSCOPE OF HIGH POINT, INC., Debtor.

### Bankruptcy No. B–82–01398 C–7.

United States Bankruptcy Court, M.D. North Carolina.

Jan. 7, 1986.

Gerald A. Pell, Greensboro, N.C., for debtor.

Bruce Connors, Greensboro, N.C., for Northwestern Bank.

J. Brooks Reitzel, Jr., High Point, N.C., Trustee.

A.L. Meyland, Greensboro, N.C., for Sydney LeBrun, Examiner, and Robertson, Neal & Co., Accountants.

## MEMORANDUM OPINION

RUFUS W. REYNOLDS, Chief Judge.

This matter came on to be heard and was heard on November 22, 1985, on the motion of Sydney LeBrun, Examiner, and Robertson, Neal & Company, (hereinafter, "Accountants"), certified public accountants, to recapture funds paid by the Debtor in the Chapter 11 reorganization case prior to conversion to a Chapter 7 liquidation. LeBrun and accountants requested that the Court enter an order to recapture funds which were paid to certain classes according to the Debtor's Plan of Reorganization. The Court held that the funds disbursed in the Chapter 11 could not be "reeled in" and denied the motion.

## FACTS

The Debtor filed for reorganization under Chapter 11 on July 30, 1982. The Court entered the order confirming the plan on February 22, 1985. The order in aid of consummation was entered March 11, 1985, and the order of substantial consummation was entered April 5, 1985.

On April 18, 1985, the attorney for the Debtor, attorneys for the Creditors' Committee, and the Examiner and accountants filed final fee applications. The Debtor objected to all of the applications; however, settlement was reached with the attorneys for the Debtor and the Creditors' Committee. The attorneys were paid pursuant to Court order prior to the allowance of fees for the CPA and Examiner.

After the hearing on the applications for final compensation of the Examiner and accountants and the Debtor's objections to these, the Court allowed these fees. On June 11, 1985, the Court allowed fees for the accountants in the sum of $10,350.72 as the balance of the fees and expenses owed as final compensation plus interest at 12% per annum until paid. In addition, after an adjustment in the requested amount, the Court awarded the Examiner the sum of $15,263.58 as the balance of the fees and expenses as final compensation plus interest at 12% per annum until paid. Prior to this hearing on final fees, the accountants were paid $15,232.25 and the Examiner was paid $30,400.00 as interim compensation.

The Examiner and accountants were not paid final compensation in the Chapter 11 due to lack of funds. As a result of this default, the Examiner and accountants filed a motion to compel payment of professional fees in consummation of the plan as confirmed or to convert the case to a Chapter 7 liquidation case. On October 15, 1985, the Court entered an order converting the case to a Chapter 7 liquidation case. The Court found that the Debtor was in default under the plan of reorganization for failure to pay administrative expenses. The plan of reorganization required that the Debtor pay Class I–A claims, the administrative expenses, fees and allowances

**564**

of compensation as determined by the Bankruptcy Court, within 30 days after the date of confirmation or as soon thereafter as allowed by the Court. At the hearing, the Court found that there were no funds available to pay such administrative expenses, none had been available since April 5, 1985, after disbursement of funds in compliance with the order of substantial consummation, and future business prospects were quite uncertain. Furthermore, expenses continued to be incurred in the operation of the business. Therefore, the Court ordered that the case be converted to a Chapter 7 liquidation case pursuant to 11 U.S.C. section 1112(b)(8) for a material default in a confirmed plan.

After conversion, the Examiner and accountants filed a motion requesting recapture of funds paid out in certain classes in order to pay the fees of the Examiner and accountants. The motion requested recapture of funds paid as final compensation in Class I–A and funds paid in Classes I–C, III–A, and III–B of the Debtor's plan of reorganization. Class I–A included administrative expenses and fees, Class I–C was postpetition wage claims, and Class III–A and Class III–B were two secured creditors.

### ISSUE

Whether funds which have been disbursed under a confirmed Chapter 11 plan of reorganization as payment for professional fees and to secured creditors can be "reeled in" to pay Chapter 11 administrative expenses after conversion to a Chapter 7 liquidation case?

### DISCUSSION

This Court concludes that funds disbursed during a Chapter 11 case pursuant to a confirmed plan of reorganization should not be "reeled in" during the Chapter 7 case for redistribution to creditors who would have received payment under the plan had the debtor been able to successfully reorganize. Absent unusual circumstances, the disbursements in the Chapter 11 case are final.

The Bankruptcy Code does not address this issue directly. Several sections provide guidance regarding administration of a case after conversion from Chapter 11 to Chapter 7.

Bankruptcy Code section 348 outlines the effects of conversion on the administration of a case. Section 348(d) provides that claims which arise during the Chapter 11 will be treated as prepetition claims, except for Chapter 11 administrative expenses. While other Chapter 11 claims are treated as prepetition claims, section 503(b) administrative expenses retain a priority position. *In re Blue Ribbon Delivery Service, Inc.,* 31 B.R. 292, 293 (Bankr.W.D.Ky.1983) (holding that a tax claim for withholding taxes generated during the Chapter 11 reorganization remained an administrative expense after conversion to a Chapter 7); *In re Chugiak Boat Works, Inc.,* 18 B.R. 292, 294 (Bankr.D.Alaska 1982) (noting the exception in section 348(d) for administrative expenses). Section 348(d) provides:

(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, *other than a claim specified in section 503(b) of this title,* shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition. (emphasis added)

*Collier* notes that the administrative expense claims specified in section 503(b)

are expressly excepted from the operation of section 348(d). Such administrative expense claims will therefore continue to have first priority in distribution as specified by section 507(a). Administrative expenses include: ... compensation and reimbursement awarded officers of the estate under section 330(a); [and] reasonable compensation for professional services rendered by an ... accountant;
....

2 Collier on Bankruptcy Section 348.05 (15th ed. 1985).

This postconversion priority position for Chapter 11 administrative expenses is limited by section 726(b). Section 726(b) provides that Chapter 7 administrative expenses have priority over Chapter 11 administrative expenses. *In re Blanton-Smith Corp.*, 44 B.R. 73, 75 (Bankr.M.D. Tenn.1984); *In re Price Chopper Supermarkets, Inc.*, 19 B.R. 462, 467 (Bankr.S.D. Cal.1982); *In re Chugiak Boat Works, Inc.*, 18 B.R. 292, 296 n. 6 (Bankr.D.Alaska 1982).

Several sections work together to provide the framework for payment of allowable administrative expenses. Section 503(b) specifies the allowable administrative expenses. Section 507(a) provides the order of priority of payment of claims, and subsection (1) provides that administrative expenses have first priority status. When a case has been converted from a Chapter 7 to a Chapter 11, section 726(b) specifies that the administrative expenses in the Chapter 7 have a higher priority than the preconversion Chapter 11 administrative expenses. Section 726(b) provides:

(b) Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), or (6) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, *except that in a case that has been converted to this chapter under section 1112 or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion....* (emphasis added)

■ Therefore, when section 726(b) is read in conjunction with section 348(d) it appears that the Chapter 7 administrative expenses have a superpriority position and next in priority are Chapter 11 administrative expenses. Thus, the Bankruptcy Code provides a special position for payment of Chapter 11 administrative expenses when a case is converted from a Chapter 11 reorganization to a Chapter 7 liquidation. The development of this priority position, albeit a secondary one, suggests that the appropriate way to handle the problem of unpaid Chapter 11 administrative expenses is to shift these to the Chapter 7 case to be paid according to this priority position. This approach is preferable to "reeling in" previously disbursed funds for redistribution.

The Advisory Committee Note to Bankruptcy Rule 1019 supports this view. Rule 1019 implements section 348 and outlines procedures to be followed when a Chapter 11 case is converted to a Chapter 7. The Advisory Committee Note specifies that "[t]he rule is not intended to invalidate any action taken in the superseded case before its conversion to Chapter 7." Bankruptcy Rule 1019 Advisory Committee Note. Such a notation suggests that disbursement in a Chapter 11 should be permanent absent exceptional circumstances.

A second factor to consider is that several sections of the Bankruptcy Code indicate the permanent nature of a confirmed plan. Section 1141(a) specifies that "the provisions of a current confirmed plan bind the debtor ... any entity acquiring property under the plan, and any creditor...." Furthermore, in the case at bar, the plan was substantially consummated prior to conversion. Section 1127(b) provides for the modification of a plan until substantial consummation but not thereafter. After substantial consummation "rights are vested and cannot be modified." 3 Norton Bankruptcy Law and Practice section 62.02 (1981) cited in *In re Northampton Corp.*, 37 B.R. 110, 113 (Bankr.E.D.Pa.1984).

In addition, the order of confirmation is revocable "at any time before 180 days after the date of the entry of the order of confirmation, and ... the court may revoke such order if and *only if* such order was procured by fraud." (Emphasis added) 11 U.S.C. section 1144 (1985). Such restrictions on revocation suggest the permanent nature of such orders.

Clearly, parties must be able to rely on the permanency of the plan. Negotiation

and compromise of positions would be greatly hindered or impossible if creditors had to contend with the possibility of returning funds after disbursement through valid court order. The secured creditors in this case stressed in their brief that the expectation of durability led to their participation in the plan of reorganization.

Case law is quite limited regarding the problem of conversion of a Chapter 11 case after some claimants have received payment and others have not. The court in *In re Fashion Spear, Inc.*, 15 B.R. 137 (Bankr.W.D.Pa.1981), considered the issue in a case governed by the prior Bankruptcy Act. During the Chapter XI proceeding, fees were paid to certain professional persons. A disagreement arose in the Chapter 7 case regarding the priority for disbursement of funds after payment of the Chapter 7 administrative expenses. The court found that the Act did not provide a priority for Chapter XI fees and expenses, and, therefore, held on an equitable basis that such creditors should share pro rata with two groups of unsecured creditors. The Court provided for a setoff of funds received against funds available as the pro rata share, but the Court specifically ordered that the Chapter XI fees and expenses would not be required to be returned if there were any overpayment in terms of the pro rata share. *Id.* at 140.

## CONCLUSION

This court strongly feels that the confirmed plan as implemented should stand and that the court should not require redistribution of previously disbursed funds. Funds were disbursed as they became available and as allowed and ordered by the court. A confirmed plan binds the participants, and rights are vested with the order of substantial consummation.

As a plan is implemented, there is always the risk of conversion. The Code specifies that Chapter 11 administrative expenses are to be paid after Chapter 7 administrative expenses. There is no suggestion in the Code that the court should require creditors to return funds and redistribute them to different creditors. On the other hand, the Code does not prohibit such an action if necessary on equitable grounds. In the case at bar, the circumstances do not warrant such an unusual measure. The case progressed in an orderly manner with disbursements according to court order. When the debtor was unable to generate enough income to meet expenses, default and conversion followed. Recapture of funds and redistribution is not appropriate in this case.

Let an order be entered agreeable with this Memorandum Opinion.