**In re HYMAN FREIGHTWAYS, INC., Debtor.**

No. 97–45174.

United States Bankruptcy Court, D. Minnesota.

May 18, 2006.

James L. Baillie, Minneapolis, MN, for Debtor.

## ORDER DENYING MOTIONS TO REFUND FEES

ROBERT J. KRESSEL, Bankruptcy Judge.

This case came on for hearing on March 22, 2006 on motions by the Chapter 7 trustee, purportedly under 11 U.S.C. § 726(a), seeking a refund of professional fees. The United States Trustee twice joined the trustee's motion.[1] Matthew R. Burton appeared on behalf of Thomas F. Miller, the trustee, Sarah J. Wencil appeared on behalf of the United States Trustee, James L. Baillie appeared on behalf of Fredrikson & Byron, P.A., Gordon B. Conn, Jr. appeared on behalf of Kalina, Wills, Gisvold & Clark, P.L.L.P. and Michael L. Meyer appeared on behalf of Merical Associates, Inc.

## BACKGROUND

All three parties from whom the trustee seeks a refund served as professionals dur-

ing the debtor's short-lived Chapter 11 case. Hyman Freightways, Inc. filed a petition under Chapter 11 on July 23, 1997. On July 25, 1997 the debtor sought authorization to pay pre-petition employee expenses and to pay cartage companies. On July 28, 1997 I granted the debtor's motion and authorized the debtor to pay $1,980,000.00 in employee expenses including withholding taxes and net wages to employees and $600,000.00 in cartage company expenses. In the course of the debtor's chapter 11 case, it hired Fredrickson & Byron as its attorneys, Kalina, Wills, Gisvold & Clark as its special labor and regulatory counsel, and Merical Associates as its financial advisor. The case was converted to a case under chapter 7 on November 12, 1997 and Thomas F. Miller was appointed trustee. He is now seeking a refund of professional fees paid to these three professionals.

### Fredrikson & Byron

On August 6, 1997, I approved the debtor's application to employ Fredrikson & Byron, P.A. Fredrikson received two retainer payments totaling $80,312.05 prior to filling the petition. On the date of the filing the debtor owed Fredrikson pre-petition fees of $5,488.50 and expenses of $26.69. On April 29, 1998 Fredrikson filed an application for compensation seeking authorization to pay from its retainer the $5,515.19 in pre-petition fees and expenses and sought allowance of its pre-conversion chapter 11 fees of $282,729.60 and expenses of $25,634.26 totaling $308,363.86.

The United States Trustee objected to the allowance of Fredrikson's chapter 11 fees and expenses. On May 21, 1998 I issued an interim order allowing Fredrik-

---

1. Without a question the United States Trustee has the right to appear and be heard on this motion. 11 U.S.C. § 307. Whether he has standing to make such a motion need not be addressed.

son's post-conversion expenses to be paid along with other Chapter 7 administrative expenses after approval of the trustee's final report and authorized Fredrikson to apply its retainer, less any amounts due to experts, to pay its pre-conversion fees and expenses. On May 22, 1998 Fredrikson applied $74,796.86 towards payment of its fees and expenses incurred during the chapter 11 case and $5,515.19 to pay for pre-petition expenses. The trustee is not seeking a refund of the pre-petition fees and expenses. The amount still owed to Fredrikson for its chapter 11 fees and expenses is $239,055.60.

### Kalina, Wills, Gisvold & Clark, P.L.L.P.

On August 14, 1997 I approved the debtor's application to employ Kalina, Wills, Gisvold & Clark, P.L.L.P. as special labor and regulatory counsel. Kalina collected a retainer from the debtor in the amount of $20,000.00. Kalina did not receive any fees during the course of the debtor's chapter 11 case. On February 19, 1998, three months after the case converted to chapter 7, Kalina made an application for compensation in the amount of $48,291.00 in fees and $851.15 in expenses. On March 19, 1998 I allowed Kalina's fees and expenses in full and authorized the firm to apply its $20,000.00 retainer to its fees and costs. The order stated that the balance of Kalina's fees will be paid "in the normal course of chapter 7 estate administration by the Chapter 7 trustee." Kalina applied the $20,000.00 to its fees and expenses. It is still owed $29,142.15.

### Merical Associates, Inc.

On August 1, 1997 I approved the employment of Merical Associates, Inc. as a financial consultant to the debtor. On September 12, 1997 Merical filed an application for compensation in the amount of $43,700.00 for professional fees and $1,010.97 in expenses. I approving the application in the amount of $43,700.00 in professional fees and $987.51 in expenses on October 10, 1997. The debtor paid Merical the allowed $44,687.51.

The trustee has estimated that the estate will be able to pay chapter 11 administrative expense claimants approximately 10% of their claims. The estate has approximately $357,785.00 available to pay for chapter 11 administrative expenses, and there are an estimated $3,516,000.00 in administrative claims.

### DISCUSSION

At the outset, I acknowledge the existence of a fair amount of case law contrary to what I am deciding. None of it is binding on me. This is a question of statutory interpretation and a lot of cases, built one upon the other, are of little help in that interpretation.

### Section 726

Primarily, the trustee relies on 11 U.S.C. § 726 for his motions. While that is a good place to start, he reaches a very wrong conclusion. That section is all about how a trustee is to *distribute* property of the estate, it says nothing about *collecting* property.

11 U.S.C. § 726(a)(1) requires that distribution first be made to the priority expenses listed in § 507. The first priority is for administrative expenses allowed under § 503(b). Section 726(b) requires that chapter 7 administrative expenses be paid before chapter 11 administrative expenses. In his motion, the trustee indicates that he has enough money to pay all of the chapter 7 administrative expenses, but not all of those from the chapter 11 case. Section 726 thus requires that chapter 11 administrative expenses be paid pro rata from

the remaining funds on hand. This should be the end of the analysis.

■ The trustee, however, is not satisfied with the requirements of the statute. He wants to turn a statute dealing with distribution into a recovery vehicle by going back in time and collecting a few of the chapter 11 administrative expenses to add to the distribution pot. Nothing in § 726 provides for such a recovery. Property becomes property of the estate in a number of ways, for example: it can be property of the debtor and thus becomes property of the estate under 11 U.S.C. § 541(a)(1), or the trustee may recover it under any of the provisions that allow for recovery of property. 11 U.S.C. § 541(a)(3). However, there is no provision in § 541 that allows or requires the trustee to recover and add to property of the estate for distribution, administrative expenses that have already been paid.

■■ Section 549 has an explicit provision for recovering transfers that have been made postpetition. 11 U.S.C. § 549(a)(1). The trustee can recover payments that are not authorized, either by the court or by the Bankruptcy Code. Many chapter 11 administrative expenses are paid in the ordinary course of business and thus are authorized by the Bankruptcy Code. *See e.g.* 11 U.S.C. § 363(c)(1). Others are approved by the court. *See e.g.* 11 U.S.C. §§ 329, 330, or 363(c)(2)(B). Occasionally, payments are made with court approval to employees on prepetition wages or for other prepetition debts. The debtor, while it was in chapter 11, made distributions of all three kinds. However, since they were all authorized either by the court or by the Bankruptcy Code, they are not recoverable under § 549. The

negative implication of § 549 is that postpetition payments authorized by the court or the Code are not recoverable by the trustee. At the very least, § 549 shows that Congress knew how to explicitly provide for trustees to recover postpetition transfers.

The suggestion by the trustee that he must recover these payments in order to comply with § 726 distribution requirements makes no sense either grammatically or legally. To the extent they have been paid, these professionals do not hold administrative expenses.[2] If the trustee were successful in recovering these payments, that would *create* an administrative expense by these professionals for that amount, but at present, none exists. So what the trustee proposes is not to make a pro rata distribution to existing administrative expense holders from existing funds, but to change both the amount of the property for distribution and the amount of administrative expenses. Carried to its logical conclusion, the trustee's argument would require the trustee to recover every payment made during the chapter 11 case and then redistribute the money in accordance with § 726, thereby unwinding the chapter 11 process. The impracticality and absurdity of this is obvious.

### Sections 329 and 330

■ The trustee points to 11 U.S.C. §§ 329 and 330 in support of his motion, but neither of those sections supports what the trustee wants to do and, in fact, they are counterindicative. Both of those sections create explicit statutory grounds for the court to order professional fees to be returned. Section 329(b) provides for the return of attorney's fees that have

---

**2.** They may hold other administrative expenses for fees that they have earned, but not

been paid.

been paid to the extent that the compensation exceeds the reasonable value of services. The trustee has neither alleged nor hinted that the professionals' compensation exceeded their reasonable value, much less proven it. 11 U.S.C. § 330(a)(5) similarly allows for returning the excess of compensation awarded on an interim basis if the court determines that the previously awarded compensation exceeded the reasonable value of the total services rendered. No one has claimed that the professionals were paid more than the reasonable value of their total services.

Thus, to the extent that the trustee purports to rely on the statute, he is trying to create something from nothing.

### *Equity*

■ The trustee also relies on equitable principles. For the purpose of this opinion, I will concede that there may be circumstances under which the court could intervene and order the refund of compensation that had been paid. I can imagine, for example, a situation where an attorney for a chapter 11 debtor in possession explicitly directs the debtor to withhold payment to vendors, employees, or taxing authorities so that money could be directed in payment of the attorney's fees. This could amount to inequitable conduct on the part of the attorney and justify ordering the return of those fees. The trustee has alleged absolutely no such equitable grounds in his motion.

In fact, what the trustee proposes to do is patently inequitable. During the course of the chapter 11 case, millions of dollars in administrative expenses were paid to suppliers and other vendors, providers of services, taxing authorities, employees, secured creditors, and even the United States Trustee. In addition, the debtor paid $1,980,000.00 in prepetition employee

expenses and $600,000.00 to cartage companies and those payments have an even lower distribution priority than those who will be receiving the trustee's eventual distribution. 11 U.S.C. § 507(a).

The trustee has not asked employees to return the payments they received so he could increase the distribution to those with a higher priority. Likewise, the trustee has not sought to recover any payments made during the chapter 11 case to secured creditors, vendors, taxing authorities, or the United States Trustee. Instead he has somewhat cynically singled out these three professionals for the modest amounts of money they received. It is difficult to imagine what equity is being accomplished through this attempt, especially, in light of the fact that it has been over eight years since these payments were made. The recipients of these payments are all corporations, partnerships, or other artificial entities. In the case of the law firms, the partners or equity holders at the time the payments were received are different from the partners or equity holders now who would bear the expense of any refund. In other words, the cost of refunding these fees would fall on a group of individuals that is different from the group that benefitted from the payments when they were made.

Lastly, as long as we are exploring equitable principles, it is interesting to see what benefit would have been derived if the trustee had been successful. In his motion, the trustee indicates that he has $357,785.00 available to pay $3,516,000.00 of chapter 11 administrative expenses resulting in a pro rata distribution of 10.18%. In making this motion, the trustee incurred $15,868.10 in attorney's fees and expenses. Those attorney's fees and expenses will be paid as a chapter 7 administrative expense, and will reduce the amount of money available to pay the

chapter 11 administrative expenses. Adding the hypothetical recovery of $139,484.37 to the amount currently on hand and subtracting the $15,686.10 the trustee incurred would result in a total of $481,401.27 available for distribution to chapter 11 administrative expense claimants. Of course, after the chapter 11 professionals refunded their fees, they would have administrative expenses for those amounts, thus increasing the administrative expenses to be paid by $139,484.37. This would increase the unpaid chapter 11 administrative expenses to $3,655,484.37. Dividing the somewhat larger pot of money of $481,401.27 by the somewhat larger pool of chapter 11 administrative claims of $3,655,484.37 would have resulted in a pro rata distribution of 13.17%, an increase of 3%.

This minor increase in the distribution hardly seems worth the expense, the time expended by the trustee, the trustee's attorney, the United States Trustee, the professionals' attorneys, the court, and the unfairness visited on the targeted professionals, especially in a case where the administrative expense claimants have been waiting for as much as nine years to receive a distribution.

### ORDER

The motions by the trustee seeking a refund of professional fees are denied.