## IN RE: HEADLEE MANAGEMENT CORP., Debtor(s).

### Case No. 09–38420 (cgm)

United States Bankruptcy Court, S.D. New York.

Signed November 17, 2014

---

Richard L. Koral, Esq., Oxman Tulis Kirkpatrick Whyatt & Geiger LLP, 120 Bloomingdale Rd., Suite 100, White Plains, N.Y. 10605, For chapter 7 trustee Mark Tulis.

Scott S. Markowitz, Rocco A. Cavaliere, Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, For Tarter Krinsky & Drogin LLP.

Eric J. Small, Trial Attorney, 74 Chapel Street, Albany, NY 12207, For the United States Trustee, Region 2.

Chapter 13

## MEMORANDUM DECISION DENYING MOTION TO DISGORGE PROFESSIONAL FEES

CECELIA G. MORRIS, CHIEF UNITED STATES BANKRUPTCY JUDGE

The chapter 7 trustee motioned to disgorge interim chapter 11 professional fees received in this converted case. The sole basis for the motion is the administrative insolvency of the chapter 7 estate. For the reasons that follow, the Court finds no statutory authority to disgorge interim professional fees purely on the basis of administrative insolvency and denies the motion.

### *Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(a), 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is

a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate).

## Background

Debtors, operators of restaurants in New York, Alabama, and Mississippi, filed for chapter 11 on December 8, 2009. Pet., ECF No. 1. The chapter 11 case was ultimately unsuccessful and converted to chapter 7 on June 4, 2012. Order Conv., ECF No. 553. During the course of the chapter 11, estate professionals amassed $850,080.45 in professional fees. Mot. ¶ 14, ECF No. 656. The claims register also shows $270,453.23 in trade debt accumulated during the chapter 11.[1] Id. ¶ 11.

Meanwhile, the chapter 7 trustee holds $153,941.11 in assets and does not anticipate any further recovery. Id. ¶ 9. He estimates chapter 7 administrative expenses at $10,947 in commissions, $5,168 in expenses, and $65,000 in legal fees. Id. ¶ 9. The chapter 7 administrative claims will be paid before any other creditor can be paid in this case. 11 U.S.C. §§ 726(a)(1), (b), 507(a)(2). This leaves $72,826 to distribute to other creditors, including the chapter 11 administrative claimants. Mot. ¶ 15, ECF No. 656. The case is, therefore, woefully insolvent, and the trustee will not be able to pay chapter 11 administrative claimants in full. Id.

During the chapter 11 case, some professionals received payments as interim fee awards. See 11 U.S.C. § 331. Tarter Krinsky & Drogin, LLP ("Tarter"), Debtor's counsel in the chapter 11, received $260,581.85 in interim payments. Mot. ¶ 16, ECF No. 656. Fox Rothschild, counsel to the creditor's committee, received $13,994.84, and Bradford A. Miller CPA,

accountant for the Debtor, received $20,000. Id. While these interim payments do not represent payment in full, they did provide these professionals with a higher percentage of their overall claims than they would now receive if no interim payments had been made.[2] Id. The trustee seeks disgorgement of the fees paid to these professionals so that the money can be redistributed to other chapter 11 administrative claimants on a pro rata basis. Id. ¶ 17. The trustee believes this is the most equitable result, and is the result that best comports with the priority scheme in § 726. Id. ¶ 22. The trustee estimates that if these payments had not been made, and were distributable pro rata amongst the chapter 11 professionals, those claimants would receive 32% of their claims. Id. ¶ 17. If the interim fees are kept by these three professionals, the estimated distribution on account of unpaid administrative claimants will be 6.5%. Id. ¶ 15.

Tarter is the only party who opposed the motion. Opp'n, ECF No. 665. The opposition raises several arguments, chief amongst them is that the Bankruptcy Code does not expressly authorize disgorgement. Id. ¶ 1. According to Tarter, cases that have ordered disgorgement of interim fees to achieve pro rata distribution in converted cases have been wrongly decided, and have contradicted Congress's intent to allow bankruptcy lawyers to be compensated as well as non-bankruptcy lawyers. Id. ¶ 2. Section 726(b) also lacks the word "avoid" that is present in other Bankruptcy Code provisions; Tarter believes this means that Congress specifically decided not to grant the trustee the

---

1. The trustee acknowledges that trade debt claims are still subject to potential litigation or voluntary reductions. Mot. ¶ 12, ECF No. 656.

2. This, of course, assumes that the Debtor would have held the funds until the conversion date rather than simply use them elsewhere.

power to avoid interim fee payments. *Id.* ¶ 20.

Even if disgorgement is an available remedy, Tarter argues that disgorgement is nonetheless discretionary as opposed to mandatory. *Id.* ¶ 22. Tarter urges the court to find that the trustee has not presented sufficient evidence to the Court for it to make a determination as to whether it should exercise this discretion. *Id.* Specifically, the trustee must, according to Tarter, determine the final amount of all chapter 11 administrative claims and ensure they are all valid. *Id.* Tarter posits that recovery of these funds will have a minor effect on the estate. *Id.* ¶ 27.

Tarter asserts that its professional fees were "carved out" from the collateral of the secured lender in the chapter 11 cash collateral order, meaning that the professional fees were paid, essentially, by the secured creditor and not by the estate. *Id.* ¶ 24. As these fees were outlined in cash collateral stipulations, Tarter argues that they constitute ordinary operating expenses that are not subject to disgorgement. *Id.*

Tarter also points to the fact that its interim fees were approved as final fees by Court order dated December 11, 2013. *Id.* ¶ 25; Order Fin. Prof. Comp., ECF No. 653. According to Tarter, once fees are ordered by the court as final fees, all fees paid can no longer be disgorged. Opp'n ¶ 25, ECF No. 665. The asserted reason is that disgorgement truly only affects the amount awarded in the final fee order. *Id.*

As a matter of policy, Tarter asserts that it is unfair to require disgorgement of chapter 11 professionals while not requiring other administrative creditors, such as employees, landlords, and vendors to make a similar sacrifice. *Id.* ¶ 26. Tarter points to Newman Chicken and McLane Food Service, both of whom were trade creditors in the chapter 11 case, as administrative claimants who received 98% of their claims and are not subject to disgorgement in the trustee's motion. *Id.* ¶ 26. The Bankruptcy Code does not make a distinction between professional fees and ordinary trade administrative claims, as both receive the same priority. *Id.* Disgorgement in this instance will not actually ensure total fairness of distribution amongst administrative creditors. *Id.*

The United States Trustee ("UST") issued a statement in support of the motion. UST Reply, ECF No. 664. According to the UST, interim fee awards are "tentative" in nature and therefore subject to disgorgement. *Id.* at 5–6. The UST also takes issue with Tarter's argument that its fees were awarded pursuant to a final fee award in this case. *Id.* at 5 n.3. The UST states that those final fee awards were only entered to set the true extent of administrative claims in the case, and the understanding was that those final fee awards were subject to this motion to disgorge at a later date. *Id.*

### Discussion

Pursuant to § 726(a), chapter 7 distributions are to be made to § 507 priority creditors before any other type of creditor. Administrative expenses allowed under § 503(b) are entitled to second priority under § 507(a)(2), behind only domestic support obligations. Compensation awarded to estate professionals pursuant to § 330(a) is a § 503(b) administrative expense entitled to second priority. 11 U.S.C. § 503(b)(2). So are expenses incurred in the ordinary course of business, including wages owed to employees for work performed after the case. *Id.* § 503(b)(1)(A)(i).

Where a chapter 11 case is converted to chapter 7, administrative expenses incurred during the chapter 11 case are afforded a lower priority than administrative

expenses incurred during the chapter 7. Section 726(b) provides:

> Payment on claims of a kind specified in paragraph (1), (2), (3), (4), (5), (6), (7), (8), (9), or (10) of section 507(a) of this title, or in paragraph (2), (3), (4), or (5) of subsection (a) of this section, shall be made pro rata among claims of the kind specified in each such particular paragraph, except that in a case that has been converted to this chapter under section 1112, 1208, or 1307 of this title, a claim allowed under section 503(b) of this title incurred under this chapter after such conversion has priority over a claim allowed under section 503(b) of this title incurred under any other chapter of this title or under this chapter before such conversion and over any expenses of a custodian superseded under section 543 of this title.

Section 726(b) makes clear that distribution to § 507 priority creditors shall be made pro rata amongst creditors within the same priority tier. Section 726(b) also makes clear that chapter 7 administrative expenses are to be paid before unpaid chapter 11 administrative expenses are paid. The result is that in cases converted from chapter 11 to chapter 7, chapter 7 administrative claimants are paid first, and chapter 11 administrative claimants share any remaining distributions pro rata.

The problem is that some chapter 11 administrative claimants may have already been paid prior to the conversion. Section 331 allows employed professionals to receive fees on an interim basis before a final fee application is made pursuant to § 330. The problem, as illustrated by this case, is that some professionals may receive interim fees that prove to be more than the professional would be entitled to receive under § 726(b).

## I. Relevant caselaw.

Some courts have remedied this inequality of distribution by ordering the professional to disgorge interim fees to the estate. *See, e.g., Ungaretti & Harris, LLP v. Steinberg (In re Res. Tech., Corp.)*, 2008 WL 4696073, at *4 (Bankr.N.D.Ill. Oct. 20, 2008); *Matz v. Hoseman*, 197 B.R. 635, 639–40 (N.D.Ill.1996); *Specker Motor Sales Co. v. Eisen*, 393 F.3d 659, 664 (6th Cir.2004), *In re Lochmiller Indus., Inc.*, 178 B.R. 241, 251 (Bankr.S.D.Cal.1995). Perhaps the leading case to do so is *Specker Motor*. The Sixth Circuit found that disgorgement of interim fees is mandatory in order to comply with the word "shall" in § 726(b). 393 F.3d at 663 (citing *Matz*, 197 B.R. at 640–41). The professional argued that the funds had already been paid out of the estate and were therefore not subject to the mandatory distribution scheme in § 726. *Specker Motor*, 393 F.3d at 662. The court disagreed, holding that interim compensation is always subject to disgorgement. *Id.* at 662–63. To support this principle, the court noted that interim compensation is always subject to reexamination and adjustment by the bankruptcy court. *Id.* at 663 (citing *In re Callister*, 673 F.2d 305 (10th Cir.1982) (finding that interim compensation awards are interlocutory and always subject to re-examination); *Matz v. Hoseman*, 197 B.R. 635, 639–40 (N.D.Ill.1996)).

To address the various policy arguments raised by the professional (many of which resemble the arguments raised in this case by Tarter), the court stated that § 726(b) is not ambiguous and must be followed. *Specker*, 393 F.3d at 664. Disgorgement also comported with the overarching policy in the Bankruptcy Code favoring equality of distribution. *Id.* (citing *Begier v. Internal Revenue Serv.*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)).

Other courts have found that disgorgement is a matter of discretion. *See, e.g., In re Anolik,* 207 B.R. 34, 39–40 (Bankr. D.Mass.1997); *Res. Tech.,* 2008 WL 4696073, at *4; *In re Kids Creek Partners, L.P.,* 219 B.R. 1020, 1022 (Bankr.N.D.Ill. 1998). This appears to be the majority view. *Res. Tech.,* 2008 WL 4696073, at *4. Courts finding that disgorgement is discretionary rely on either § 726(b) itself or the court's inherent discretion under § 105(a). *Id.* In the absence of a specific statutory provision authorizing disgorgement, many courts have held that the matter is left to the court's evaluation. *In re Chute,* 235 B.R. 700, 701–02 (Bankr.D.Mass.1999) (collecting cases).

There are also cases that have found no authority in either § 726(b) or § 105(a) to compel disgorgement of interim fees. In *In re St. Joseph Cleaners, Inc.,* 346 B.R. 430 (Bankr.W.D.Mich.2006), the court declined to disgorge fees under § 726(b) where the chapter 11 plan had been confirmed prior to conversion. The court noted that § 726(b) does not enumerate a disgorgement remedy, and found that courts utilizing § 105(a) had invented a remedy not created by statute. *Id.* at 433–434. While the court recognized *Specker Motor* as binding in that circuit, the court did express doubts about its reach. *Id.* at 439. In particular, the court noted that the authority to recover interim fees is expressly codified in § 330(a)(5), which states:

> The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

*Id.* at 437–38. In the court's view, the limited remedy provided in § 330(a)(5) represents the sole means to recover interim fees. *Id.* at 439.

In *In re Hyman Freightways, Inc.,* 342 B.R. 575 (Bankr.D.Minn.2006), *aff'd,* 2006 WL 3757972 (D.Minn. Dec. 20, 2006), the court found no provision in the Bankruptcy Code allowing for disgorgement of interim fees to effectuate § 726(b). *Id.* at 579. The court noted that § 549 provides express provisions for the recovery of transfers made post-petition and does not allow the trustee to recover payments to professionals that are authorized by the court or Bankruptcy Code. *Id.* The court also found disgorgement impractical as well as absurd. *Id.* Taken to its fullest extent, the trustee would be forced to unwind the entire chapter 11 to actually comply with § 726(b). *Id.*

Other cases recognize numerous instances where disgorgement under § 726(b) is not appropriate, even if it is available generally. One exception exists where the chapter 11 plan was confirmed prior to conversion. *See St. Joseph Cleaners,* 346 B.R. at 441. The rationale for this exception is that parties "must be able to rely on the permanency of the plan." *Id.* at 442 (quoting *In re Kaleidoscope of High Point, Inc.,* 56 B.R. 562 (Bankr.M.D.N.C.1986)). Another exception exists where the professional was paid directly by the secured creditor through a carve-out of proceeds from the creditor's lien. *In re U.S. Flow Corp.,* 332 B.R. 792, 797 (Bankr.W.D. Mich.2005). The rationale is that funds paid pursuant to a carve-out are property of the creditor, not the estate, and therefore cannot be recovered by the trustee. *Id.* Courts also have recognized that prepetition security retainers are not subject to disgorgement. *In re Dick Cepek, Inc.,* 339 B.R. 730, 737–39 (9th Cir. BAP 2006) (collecting cases). The reason is that

these retainers generally represent security interests, and secured creditors are not incorporated in § 726(b). *See In re Zukoski*, 237 B.R. 194, 198 (Bankr.M.D.Fla. 1998). And, while it is considered an "unsettled" issue, some courts recognize that only interim fees can be disgorged and not final fees. *In re Rockaway Bedding, Inc.*, 454 B.R. 592, 597 (Bankr.D.N.J.2011) (collecting cases). Even though the availability of disgorgement appears to be the majority view, it is nonetheless "subject to an ever increasing list of exceptions." *Joseph Cleaners*, 346 B.R. at 444.

■ For the reasons that follow, the Court holds that there is no authority in the Bankruptcy Code to compel disgorgement of interim fees under §§ 726(a) or 105(a).

## II. Statutory analysis.

■ This analysis must begin with the statutory text. *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). If the statute is unambiguous, coherent, and consistent, the analysis must end with the text as well. *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, —— U.S. ——, 131 S.Ct. 1885, 1893, 179 L.Ed.2d 825 (2011).

Section 726(b) is silent as to any remedies. Rather, it only provides that payments shall be made pro rata amongst claims of the type specified in § 507. While *Specker Motor* and other cases find that the word "shall" means that disgorgement of professional fees is mandatory to comply with § 726(b), this Court is not convinced that § 726(b) necessitates this result. Rather, § 726(b) can be read to mean that any payment by the trustee must be paid in the order given by § 726(b). Nothing in § 726(b) dictates the source of payments. *See St. Joseph Cleaners*, 346 B.R. at 444.

What constitutes a source for payment by the trustee is covered in various provisions of the Bankruptcy Code. *Hyman Freightways*, 342 B.R. at 578–79. Section 541 defines property of the estate and enumerates various exceptions. Section 548 provides the trustee with the ability to avoid fraudulent transfers, and § 547 provides the trustee with the ability to avoid preferential transfers.

More relevant, section 549 enumerates instances where the trustee can avoid transfers occurring postpetition. Section 549(a) provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)

(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

Even more telling is § 330(a)(5):

The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate.

Section 330(a)(5) provides clear authority to disgorge interim fees. The authority is only given, however, if the interim compensation exceeds the actual final award of fees under § 330. The final fee award depends on the reasonableness of the fees charged. 11 U.S.C. § 330(a)(1)(A). "[A]ll relevant factors" are to be taken into account. 11 U.S.C. § 330(a)(3).

■ The Bankruptcy Code, therefore, has a comprehensive system for the recovery of assets by the trustee. This scheme specifically includes provisions for the recovery of postpetition transfers, and for the recovery of interim fees. *Hyman Freightways*, 342 B.R. at 578–79. The fees at issue here were both. "The presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement.... The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 97, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981).

■ Nor can the court use § 105(a) to fashion a remedy where the Bankruptcy Code provides one. *See Joseph Cleaners*, 346 B.R. at 439 ("the courts' latitude under Section 105(a) prior to 1994 has been circumscribed by Congress' enactment of Section 330(a)(5)."). In *Law v. Siegel*, ―― U.S. ――, 134 S.Ct. 1188, 1193, 188 L.Ed.2d 146 (2014), the bankruptcy court allowed the chapter 7 trustee to "surcharge" the debtor's homestead exemption to recover attorney's fees for bringing an action to disallow sham mortgages that had been created by the debtor to preserve equity. "Surcharging" exemptions was a practice based on equitable principles. *Id.* at 1194 (citing *Latman v. Burdette*, 366 F.3d 774 (9th Cir.2004)). It was applied in extraordinary cases, such as those where the debtor had engaged in fraudulent conduct. *Siegel*, 134 S.Ct. at 1194 (citation omitted).

The Court stated that § 105(a) could not be used to "override explicit mandates of other sections of the Bankruptcy Code." *Id.* Section 522(k) provides that exempted property is not liable for the payment of administrative expenses, and the attorney fees were undoubtedly administrative expenses. *Id.* at 1195. The surcharge violated this express provision, thereby exceeding the bankruptcy court's authority under § 105(a). *Id.*

While the Court held that surcharging violated an express provision, it was also relevant to the Court that "in crafting the provisions of § 522, 'Congress balanced the difficult choices that exemption limits impose on debtors with the economic harm that exemptions visit on creditors.'" *Siegel*, 134 S.Ct. at 1197–98 (quoting *Schwab v. Reilly*, 560 U.S. 770, 791, 130 S.Ct. 2652, 177 L.Ed.2d 234 (2010)). That is definitely the case here; in fact, the Court expressly stated that "the same can be said of the limits imposed on recovery of administrative expenses by trustees." *Siegel*, 134 S.Ct. at 1198. Congress, in enacting the various provisions that define what the trustee can and cannot recover, particularly § 330(a)(5), weighed the various policy concerns. "[I]t is not for the courts to alter the balance struck by the statute." *Siegel*, 134 S.Ct. at 1198 (citing *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 376–377, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990)).

Reading § 726(b) in conjunction with other Bankruptcy Code provisions makes clear that the absolute pro rata distribution contemplated in *Specker Motor* is not even possible. It is universal in the cases that creditors who are paid in the ordinary course of business pursuant to § 363(c)(1) are not subject to disgorgement under § 726(b). *In re Livore*, 473 B.R. 864, 870 (Bankr.D.N.J.2012) ("[W]e are unaware of any cases that hold that ordinary course payments may be disgorged."). The courts read § 549 as proscribing the disgorgement of ordinary course payments. *Id.* at 868. Section 549(a)(2)(B) proscribes

the avoidance of any payment "authorized by this title or by the court." The cases hold that this prohibits the trustee from disgorging ordinary course payments regardless of the apparent mandate of § 726(b). *Id.* (discussing cases). The courts also do not allow disgorgement after a chapter 11 plan is confirmed. *See St. Joseph Cleaners,* 346 B.R. at 441. Otherwise, the finality of the plan under § 1141 would be circumvented. *Kaleidoscope,* 56 B.R. at 565–66 ("Clearly, parties must be able to rely on the permanency of the plan. Negotiation and compromise of positions would be greatly hindered or impossible if creditors had to contend with the possibility of returning funds after disbursement through valid court order.").

██ The court is "not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). The better reading of § 726(b) is that it mandates that any "payment" made by the trustee is made pursuant to the order of distribution provided. The sources of the trustee's payments are derived from other provisions of the Bankruptcy Code, such as §§ 330(a)(5) and 549. This is the reading that allows §§ 330(a)(5), 549(a)(2)(B), 1141, and 726(b) to operate harmoniously. *See St. Joseph Cleaners,* 346 B.R. at 444 ("Indeed, the Bankruptcy Code guarantees through Section 363(c) and the limitations of Section 549 that absolute equality of distribution will not be realized as soon as the Chapter 11 debtor uses the first dollar of estate property to pay for a post-petition good or service.").

Courts attempt to remedy the distinction between professionals and other credi-

tors not subject to disgorgement, such as ordinary course creditors, by noting that "interim compensation is subject to reexamination and adjustment." *Specker Motor,* 393 F.3d at 662 (citation omitted); *see also Matz,* 197 B.R. at 639 ("An award of interim fees by the bankruptcy court under § 331 is not final. . . .") (citation omitted). Their reasoning is that, unlike ordinary course payments or other payments that cannot be disgorged in the cases, interim fees are interlocutory in nature and therefore recoverable. These cases reach farther than § 330(a)(5), which only allows for the recovery of interim fees to the extent they exceed the final fee award. *St. Joseph Cleaners,* 346 B.R. at 439. Congress has expressly defined the revocability of interim fees. Insolvency upon conversion does not fall within that definition, and the Court should not alter the balance struck by the statute. *St. Joseph Cleaners,* 346 B.R. at 444 ("[I]t is reasonable to ask why Chapter 11 professionals should be singled out in pursuit of an unachievable goal based upon a remedy which is not found anywhere within the Bankruptcy Code itself. . . .").

That is not to say that professionals can simply run a chapter 11 case into administrative insolvency and avoid all responsibility:

> the factors listed in Section 330(a)(3) are not exclusive, 11 U.S.C. § 102(3), and therefore administrative insolvency may still be relevant to the court's evaluation of whether overall compensation sought by the professional is reasonable under the circumstances. For example, an attorney's failure to take into consideration the relative costs of a legal strategy in relation to the benefits to be had may be an important factor in determining the final fee to be awarded. However, Section 330 offers no justification for the rule imposed by *Specker Motor* and

other similar cases, that being that the mere existence of an administrative insolvency at the time of the Section 726(b) distribution mandates an irrebuttable presumption of unreasonableness....

*St. Joseph Cleaners*, 346 B.R. at 438–39. This potential was also noted in *Hyman Freightways*:

> I will concede that there may be circumstances under which the court could intervene and order the refund of compensation that had been paid. I can imagine, for example, a situation where an attorney for a chapter 11 debtor in possession explicitly directs the debtor to withhold payment to vendors, employees, or taxing authorities so that money could be directed in payment of the attorney's fees. This could amount to inequitable conduct on the part of the attorney and justify ordering the return of those fees. The trustee has alleged absolutely no such equitable grounds in his motion.

342 B.R. at 580. In this case, the UST and trustee agreed that the professionals earned the awarded fees, and declined to challenge their reasonableness.

At present, notwithstanding this motion, the trustee holds $153,941.11 in assets to distribute. In the Court's view, he can comply with § 726(b) by distributing those assets (and any others he recovers) in accordance with the distribution scheme therein without the need to disgorge professional fees. *See Hyman Freightways*, 342 B.R. at 579.

### Conclusion

For the foregoing reasons, the trustee's motion is denied. Tarter should submit an order consistent with this opinion.